756 So.2d 120 (2000)
Joan O. KELLER, Appellant,
v.
NEWMAN SONS, INC, Appellee.
No. 3D99-1658.
District Court of Appeal of Florida, Third District.
February 16, 2000.
Rehearing Denied May 17, 2000.
*121 Holland & Knight LLP and James D. Wing and Belinda A. Hatzenbuhler, Miami, for appellant.
Rutherford, Mulhall & Wargo, P.A., and Stephen A. Mendelsohn, Boca Raton, for appellee.
Before COPE, GREEN and FLETCHER, JJ.
COPE, J.
This is an appeal by a homeowner in a construction lien case. We affirm in part and reverse in part.
Defendant-appellant Joan O. Keller entered into a contract with Strickland Electric Service, Inc. for a Katolight generator to be installed at her home, for use in case of a hurricane. This was a $47,919 transaction, payable in installments, and the homeowner paid Strickland $19,409.50 upon signing the contract. The homeowner did not record a notice of commencement under Florida's Construction Lien Law. See § 713.13, Fla. Stat. (Supp. 1998).
Strickland arranged to purchase an Onan generator, not a Katolight, from appellee Newman Sons, Inc. Strickland put down a deposit on the Onan generator and, prior to delivery, sent a $22,900 check for the unpaid balance. Newman deposited the check, but it bounced. Strickland told Newman to redeposit the check. Without waiting for the funds to clear, Newman delivered the generator to the homeowner.
The homeowner recognized that the generator was not the one required by the contract. The price of the Onan was $9,219 lower than the price of the Katolight. Upon Strickland's agreement to discount the contract price accordingly, the homeowner decided to accept the Onan generator.
The homeowner's contract with Strickland called for a progress payment of $19,409.50 upon delivery of the generator, so the homeowner wrote Strickland another check for that amount.
In the meantime, Strickland stopped payment on its check to Newman. Seven days after the delivery of the generator, which was also seven days after the homeowner made her progress payment, Newman filed its notice to owner under the *122 Construction Lien Law. See id. § 713.06, Fla. Stat.
Strickland went out of business, never having paid Newman and never having installed the generator. The homeowner hired another contractor to perform the installation.
Newman sued the homeowner, contending that under the Construction Lien Law, the homeowner must pay the unpaid balance on the Onan generator. Newman reasoned that after delivering the generator it had forty-five days to serve its notice to owner, see id. § 713.06(2)(a), and thus its notice to owner in this case was timely. Newman claimed that the $19,409.50 progress payment to Strickland was not proper under the circumstances because the homeowner made the payment within the forty-five-day period after delivery of the generator, when Newman's time for serving the notice to owner had not yet expired.
The homeowner also moved for summary judgment, contending that Newman had misinterpreted the Construction Lien Law and that she owed nothing further to Newman. The trial court entered summary final judgment in favor of Newman, and the homeowner has appealed.
The homeowner and Newman are not in privity, and thus their relationship is governed by section 713.06, Florida Statutes, (Supp.1998). The homeowner first points out that in order for the supplier, Newman, to be entitled to a lien, it is necessary that the materialsthe generatorbe "furnished in accordance with [the supplier's] contract and with the direct contract [between the homeowner and Strickland]. ..." Id. § 713.06(1) (emphasis added); see also id. at § 713.01(a) (defining "direct contract"). In this case the homeowner's direct contract with Strickland called for a Katolight generator, but the generator actually delivered was an Onan. The homeowner argues that this nonconformity defeats Newman's claim of lien. "Where the written contract is at variance with the claim of lien, Mechanic's Lien jurisdiction will not lie." Lofter v. Rashide, 523 So.2d 1230, 1231 (Fla. 3d DCA 1988) (citing Hawaiian Inn of Daytona Beach, Inc. v. Robert Myers Painting, Inc., 363 So.2d 125 (Fla. 1st DCA 1978); Morris & Esher, Inc. v. Olympia Enters., Inc., 200 So.2d 579 (Fla. 3d DCA 1967)).
We think the owner is estopped from invoking the nonconformity under the circumstances of this case. Upon delivery of the generator the homeowner immediately determined that it was nonconforming but made a conscious decision to accept the generator in exchange for a credit on the price. There is no indication of any such circumstances in the above cited cases.
The homeowner next argues that there was nothing improper or impermissible about her progress payment of $19,409.50. We agree. The homeowner's contract with Strickland required the homeowner to make a down payment of $19,409.50 and then a progress payment of $19,409.50 upon delivery of the generator.[1] When delivery took place, Newman had not served a notice to owner, and did not do so until seven days after the progress payment had already been made.
Section 713.06, Florida Statutes, provides with regard to progress payments (except the final payment), "The owner shall be under no obligation to any lienor, except laborers, from whom he or she has not received a notice to owner at the time of making a payment." Id. § 713.06(3)(c)1.[2] The owner's statutory *123 duty to lienors with respect to progress payments is confined to those lienors "giving notice prior to the time of the payment." Id. § 713.06(3)(c)1.
Newman relies heavily on older case law, but the homeowner points out, correctly, that there was a major revision of the construction lien law in 1990. See Fred R. Dudley, William A. Buzzett, and Deborah Kaveney Kearney, Construction Lien Law Reform: The Equilibrium of Change, 18 Fla. St. U.L.Rev. 257, 272 (1991). Under the previous statute, a payment was not "proper" on a direct contract if it was made prior to recording a notice of commencement. See § 713.06(3)(a), Fla. Stat. (1989).[3] Since no notice of commencement was recorded in this case, under the earlier statute, the owner's progress payments would have been "improper" and Newman would have been able to press its claim to those amounts.
That analysis does not survive the 1990 statutory amendments. The "boldest and most far-reaching [legislative] change" in 1990 was elimination of the definition of "proper payment" contained in subsection 713.06(a). See 18 Fla. St. U.L.Rev. at 272. By eliminating the former provision on "proper payment," "the Legislature has eliminated one of the harshest penalties associated with the lien law." Id. at 273.
Under the current version of the statute, the progress payment made here was in accordance with the law and did not breach any duty owed to Newman. The obvious conclusion is that if a supplier wishes to be included in progress payments, it would behoove the supplier to serve the notice to owner sooner, rather than later.
Although Newman's notice to owner had no effect on previously-made progress payments, it was served within forty-five days and therefore was timely with respect to any subsequent payments coming due. However, under the Construction Lien Law an owner's liability cannot exceed the total contract price. See id. § 713.06(4)(a); Alton Towers, Inc. v. Coplan Pipe & Supply Co., 262 So.2d 671, 673 (Fla.1972) (citation omitted). The *124 anomaly here is that after making the second progress payment, the balance owing on the original contract with Strickland was $9,100 but because of the substitution of the Onan generator, the homeowner was owed a credit of $9,219. This meant that there was nothing left in the original contract price. See § 713.01(6), Fla. Stat. (Supp.1998).
After Strickland abandoned the job, the homeowner entered into a contract with a different company for the installation of the generator. The contract price was $2,500, and the final amount actually paid was approximately $3,500. The homeowner did not file an affidavit of recommencement, or a notice of commencement, under subsection 713.07(4), Florida Statutes (1997). We conclude that the owner was required to do so. See id.; Florida Steel Corp. v. Adaptable Developments, Inc., 503 So.2d 1232, 1234 (Fla. 1986).
The homeowner argues that the completion contract was exempt by reason of subsection 713.02(5), Florida Statutes, which creates an exemption from the Construction Lien Law for "[a]ny improvement for which the direct contract price is $2,500 or less [with an exception not applicable here]." However, the $2,500 price of the completion contract is not the relevant benchmark. Subsection 713.07(4) spells out the procedure where "construction ceases before completion and the owner desires to recommence construction...." That statute refers to cessation and recommencement of an underlying contract. Here, the underlying contract was for $47,919, an amount in excess of $2,500, so it follows that compliance with subsection 713.07(4) was required and subsection 713.02(5) has no application. Newman had served its notice to owner within the forty-five-day limit and prior to any payment by the homeowner to the successor contractor. In the absence of the homeowner's compliance with subsection 713.07(4), Newman is entitled to assert a claim for the amount paid on the completion contract, which was approximately $3,500.
Affirmed in part, reversed in part, and remanded for further proceedings consistent herewith.
NOTES
[1] A final payment of $9,100 would be due upon installation of the generator.
[2] The applicable provision states, in full:

(c) When any payment becomes due to the contractor on the direct contract, except the final payment:
1. The owner shall pay or cause to be paid, within the limitations imposed by subparagraph 2., the sum then due to each lienor giving notice prior to the time of the payment. The owner may require, and, in such event, the contractor shall furnish as a prerequisite to requiring payment to himself or herself, an affidavit as prescribed in subparagraph (d)1., on any payment made, or to be made, on a direct contract, but the furnishing of the affidavit shall not relieve the owner of his or her responsibility to pay or cause to be paid all lienors giving notice. The owner shall be under no obligation to any lienor, except laborers, from whom he or she has not received a notice to owner at the time of making a payment.
2. When the payment due is insufficient to pay all bills of lienors giving notice, the owner shall prorate the amount then due under the direct contract among the lienors giving notice pro rata in the manner prescribed in subsection (4). Lienors receiving money shall execute partial releases, as provided in s. 713.20(2), to the extent of the payment received.
Id. § 713.06(3)(c) (Supp.1998).
Newman argues that the reference in subparagraph 1 to "subparagraph 2" is a reference to subsection 713.06(2), which is the provision allowing, among other things, a supplier forty-five days in which to serve the notice of commencement. Newman contends that thereby a forty-five-day waiting period has been written into the just quoted paragraph 713.06(3)(c).
Newman is in error in reading the statutory cross-references. The term "subparagraph" is a specifically defined term, as explained in the preface to the official Florida Statutes. See 5 Florida Statutes (1997), preface at vii. "Chapters are identified by whole Arabic numbers; sections, by numbers containing a decimal point; subsections, by whole Arabic numbers enclosed by parentheses; paragraphs, by lowercase letters enclosed by parentheses; subparagraphs, by whole Arabic numbers followed by a period...." Id. The reference to "subparagraph 2" is a reference to the just-quoted subparagraph 713.06(3)(c)2., not subsection 713.06(2).
[3] The 1989 statute provided, "The owner shall not pay any money on account of a direct contract prior to recording of the notice provided in s. 713.03, and any amount so paid shall be held improperly paid." § 713.06(3)(a), Fla. Stat. (1989), repealed by ch. 90-109, § 4, Laws of Fla.