774 So.2d 679 (2000)
Farren IVEY, Petitioner,
v.
ALLSTATE INSURANCE CO., Respondent.
No. SC95515.
Supreme Court of Florida.
December 7, 2000.
*680 Roy D. Wasson, Miami, Florida; and Ross Bennett Gampel of Klemick and Gampel, P.A., Miami, Florida, for Petitioner.
Richard A. Sherman and Rosemary B. Wilder of the Law Offices of Richard A. Sherman, P.A., Fort Lauderdale, Florida; and Frank S. Goldstein and Christopher L. Kirwan of Green, Murphy, Wilke & Murphy, P.A., Fort Lauderdale, Florida, for Respondent.
Dean Mitchell, Ocala, Florida, for Academy of Florida Trial Lawyers, Amicus Curiae.
*681 LEWIS, J.
We have for review Allstate Insurance Co. v. Ivey, 728 So.2d 282 (Fla. 3d DCA 1999), on the basis of express and direct conflict with Haines City Community Development v. Heggs, 658 So.2d 523 (Fla. 1995); Wollard v. Lloyd's & Companies of Lloyd's, 439 So.2d 217 (Fla.1983); and Dunmore v. Interstate Fire Insurance Co., 301 So.2d 502 (Fla. 1st DCA 1974). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. For the reasons detailed below, we quash the Third District's decision in Ivey.

FACTS
While standing on a sidewalk, Farren Ivey was struck by an automobile operated by an Allstate-insured motorist. She suffered injuries to both her lower left leg and right shoulder. After receiving treatment for her injuries, Ivey timely applied to Allstate for personal injury protection (PIP) benefits. A health insurance claim form (HICF), reflecting a total of $710 in charges for treatment, along with the physician's report, was timely and properly forwarded to Allstate. While the HICF itself did not specify with absolute clarity whether the charges related to treatment for one or two injuries,[1] the physician's report very clearly and unambiguously stated that Ivey had received treatment for both injuries. Allstate, without conducting any investigation whatsoever and without even referring to the physician's report, decided to simply assume that the amount claimed represented treatment for only one injury. Thus, Allstate unilaterally decided to make a reduced PIP payment reflecting only eighty percent of what Allstate had itself estimated to be the proper cost of treatment for one injury.
Ivey filed the present action seeking payment of the proper PIP amount alleging that Allstate had not provided full payment within thirty days after receiving written notice of the covered loss, as required by section 627.736(4)(b), Florida Statutes (1995). Ivey sought recovery of the additional amount appearing on the HICF which Allstate had unilaterally reduced. During the deposition of the treating physician, Allstate realized that Ivey had received treatment for two injuries and, therefore, the doctor was actually entitled to the amount Allstate had unilaterally and without investigation withheld. It was only after the filing of the legal action and the completion of some discovery that Allstate finally paid the additional amount to which the doctor was actually entitled and for which Ivey had initially submitted a claim. Ivey then requested an award of attorney's fees pursuant to sections 627.736(8) and 627.428(1), Florida Statutes (1995), because Allstate had conceded and paid the additional amount actually due and owing.
The county court concluded that because Allstate had paid the balance owed within thirty days of learning of its own unilateral mistake, Ivey was not entitled to attorney's fees. The county court reasoned that Allstate was not required to look beyond the HICF to clarify any questions or alleged ambiguities. The circuit court, sitting in its appellate capacity, reversed the county court's decision and in a written opinion unanimously held that Ivey was entitled to attorney's fees because a simple investigation by Allstate, within the initial thirty-day statutory period, would have revealed that the amount listed for treatment in the HICF represented treatment for injuries to multiple body areas and was correct. Allstate, dissatisfied with the appellate decision of the circuit court, sought certiorari relief in the Third District Court of Appeal. The Third District granted certiorari and reversed the circuit court's appellate decision, reasoning that because Allstate did not pay the entire claim due to an error in the doctor's bill, Ivey was not entitled to attorney's fees. See Allstate Insurance Co. v. Ivey, 728 So.2d 282, 283 (Fla. 3d DCA 1999). Ivey has petitioned this Court for review.

*682 ANALYSIS

1. Certiorari Review
In Haines City Community Development v. Heggs, 658 So.2d 523, 525 (Fla.1995), we clarified and narrowed the scope of common law certiorari jurisdiction by noting that "[a] decision made according to the form of the law and the rules prescribed for rendering it, although it may be erroneous in its conclusion as applied to the facts, is not an illegal or irregular act or proceeding remedial by certiorari." Instead, we held that the proper inquiry under certiorari review is limited to whether the circuit court afforded procedural due process and whether it applied the correct law. See Heggs, 658 So.2d at 528; see also Combs v. State, 436 So.2d 93, 95 (Fla.1983) (holding that in considering common law certiorari, district courts of appeal should be primarily concerned with the seriousness of the error, not the mere existence of error, and should exercise certiorari discretion only when there has been a violation of clearly established principles of law resulting in a miscarriage of justice); Martin County v. City of Stuart, 736 So.2d 1264, 1265 (Fla. 4th DCA 1999) (holding that when a district court of appeal reviews by certiorari the decision of a three-judge panel of the circuit court in its appellate capacity, the district court is limited to determining whether there was a lack of procedural due process or a departure from the essential requirements of law). As further explained by Judge Altenbernd:
It is well-established that certiorari should not be used as a vehicle for a second appeal in a typical case tried in county court. Kennington v. Gillman, 284 So.2d 405 (Fla. 1st DCA 1973). When issuing this writ, district courts are guided by the bookend discussions in Combs v. State, 436 So.2d 93 (Fla.1983), and Haines City Community Development v. Heggs, 658 So.2d 523 (Fla.1995). In essence, the supreme court has cautioned the district courts to be prudent and deliberate when deciding to exercise this extraordinary power, but not so wary as to deprive litigants and the public of essential justice.

Combs and Heggs analyze the district courts' power over a "second appeal" certiorari in terms of discretion. Thus, these cases recognize that the district courts have jurisdictional power to review a circuit court decision in its appellate capacity. The controlling question is whether the discretion given to the district court under the limited standard of review provided by a petition for writ of common law certiorari is sufficient to authorize a remedy for the error committed in this case.
Existing case law establishes that the departure from the essential requirements of the law necessary for the issuance of a writ of certiorari is something more than a simple legal error. Both Combs and Heggs suggest that the district court should examine the seriousness of the error and use its discretion to correct an error "only when there has been a violation of [a] clearly established principle of law resulting in a miscarriage of justice." Heggs, 658 So.2d at 528 (quoting Combs v. State, 436 So.2d 93, 95-96 (Fla.1983)). In this case, the error occurred because the established law provided no controlling principle and the resulting monetary loss for Ms. Stilson, while unfortunate from her perspective, is not sufficient by itself to be a miscarriage of justice.
Both the county court and the circuit court were aware of the general law announced in [Government Employees Insurance Co. v. ]Novak [, 453 So.2d 1116 (Fla.1984)]. Unfortunately, there is no Florida case squarely discussing an object intentionally thrown at a moving car. Without such controlling precedent, we cannot conclude that either court violated a "clearly established principle of law." At worst, both courts misapplied the correct law. Their error is not a matter of disobedience to the law, but simply a failure to logically *683 extend Novak to reach the correct result under a new set of facts.
This case highlights a significant problem within our existing judicial structure. It is difficult for the law to evolve in unreported decisions issued in circuit court appeals. What evolution occurs may take conflicting approaches within the numerous circuits. As a result, there may never be "clearly established principles of law" governing a wide array of county court issues, including PIP issues.
There is a great temptation in a case like this one to announce a "miscarriage of justice" simply to provide precedent where precedent is needed. We do not interpret Heggs as giving this court that degree of discretion in a certiorari proceeding. Such an interpretation would invite certiorari review of a large number of the appellate decisions issued by circuit courts.
Stilson v. Allstate Ins. Co., 692 So.2d 979, 982-83 (Fla. 2d DCA 1997).
In this case, it is clear that the Third District merely disagreed with the circuit court's interpretation of the applicable law, which, as explained in Heggs, is an improper basis for common law certiorari. See 658 So.2d at 525. The announced basis for exercising its certiorari jurisdiction was a single statement quoted from Fortune Insurance Co. v. Everglades Diagnostics, Inc., 721 So.2d 384, 385 (Fla. 4th DCA 1998) that: "Given the pervasiveness of automobiles and PIP coverage in this state, we deem an erroneous interpretation of this law to be important enough for certiorari." Ivey, 728 So.2d at 283 n. 1 (emphasis supplied). The Third District's decision did not even purport to consider why the circuit court's decision constituted a denial of procedural due process, application of incorrect law, or a miscarriage of justice, as is required by this Court's precedents. Rather, the district court below expressly created a new category of appellate review never before recognized under Florida law and in express and direct conflict with authority to the contrary. District courts have never been allowed to review decisions, under the guise of certiorari jurisdiction, simply because they are dissatisfied with the result of a decision of a circuit court sitting in its appellate capacity. Certiorari relief should not be afforded so differently in our various appellate courts.
The express statement presented by counsel for Allstate during oral argument as a basis for affording certiorari jurisdiction is also misdirected. Allstate specifically asserted to this Court that "as a practical matter, the appellate courts need to be able to review the circuit courts sitting in their appellate capacity because [the circuit courts] are not really equipped to decide appellate cases, to decide issues of law." In this case, a three-judge panel of the circuit court issued a well-reasoned, written opinion thoroughly supported by appropriate reference to Florida decisions. The circuit court performed exactly as one would expect from an appellate court.
If a problem is occurring in our current appellate system because a large number of circuit court decisions are unreported, then perhaps that issue should be addressed and resolved. The solution is not, however, a second level of appellate review when a district court simply disagrees with the decision of a circuit court sitting in its appellate capacity. The concept of certiorari review should have a recognized uniformity of application. Thus, we conclude that the district court below inappropriately exercised certiorari review.

2. Burden Under No-Fault Insurance Scheme
Not only did the Third District incorrectly expand the scope of certiorari by permitting what, in essence, amounted to a second appeal, but the result is also contrary to well established and recognized principles of existing PIP law. Without a doubt, the purpose of the no-fault statutory scheme is to "provide swift and virtually automatic payment so that the injured insured *684 may get on with his life without undue financial interruption." Government Employees Ins. Co. v. Gonzalez, 512 So.2d 269, 271 (Fla. 3d DCA 1987) (citing Comeau v. Safeco Ins. Co., 356 So.2d 790 (Fla.1978)). To this end, section 627.736(4)(b), Florida Statutes (1995), clearly provides that PIP insurance benefits "shall be overdue if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of same."
For over a quarter of a century, Florida courts have consistently held:
[T]he statutory language is clear and unambiguous. The insurance company has thirty days in which to verify the claim after receipt of an application for benefits. There is no provision in the statute to toll this limitation. The burden is clearly upon the insurer to authenticate the claim within the statutory time period. To rule otherwise would render the recently enacted "no fault" insurance statute a "no pay" plan-a result we are sure was not intended by the legislature.
Dunmore v. Interstate Fire Ins. Co., 301 So.2d 502, 502 (Fla. 1st DCA 1974), cited with approval in Amador v. United Auto. Ins. Co., 748 So.2d 307 (Fla. 3d DCA 1999); see also Perez v. State Farm Fire & Cas. Co., 746 So.2d 1123 (Fla. 3d DCA 1999); Fortune Ins. Co. v. Pacheco, 695 So.2d 394, 395 (Fla. 3d DCA 1997); Martinez v. Fortune Ins. Co., 684 So.2d 201, 203 (Fla. 4th DCA 1996); Crooks v. State Farm Mut. Auto. Ins. Co., 659 So.2d 1266, 1268 (Fla. 3d DCA 1995).
Here, Allstate unilaterally assumed, without even a single phone call, that the bill submitted was for treatment to one area of the body on each visit, even though the bill indicated that Ivey had suffered two distinct injuries and the medical report indicated that she had received treatment for two injuries. Only after a legal action was filed and the deposition of the doctor was taken did Allstate face the reality that its assumption was erroneous. The district court's opinion would essentially eliminate the insurer's burden of investigating a claim by holding that "[b]ecause Allstate did not pay the entire claim due to an error in the doctor's bill, its failure to pay said claim does not rise to the level of `wrongful' which would entitle Ms. Ivey to an award of attorney's fees." Ivey, 728 So.2d at 283.
To the contrary, Florida law is clear that in "any dispute" which leads to judgment against the insurer and in favor of the insured, attorney's fees shall be awarded to the insured. See §§ 627.736(8), 627.428(1); see also Dunmore, 301 So.2d at 503. That is, under PIP law, the focus is outcome-oriented. If a dispute arises between an insurer and an insured, and judgment is entered in favor of the insured, he or she is entitled to attorney's fees. It is the incorrect denial of benefits, not the presence of some sinister concept of "wrongfulness," that generates the basic entitlement to the fees if such denial is incorrect. It is clear to us that the purpose of this provision is to level the playing field so that the economic power of insurance companies is not so overwhelming that injustice may be encouraged because people will not have the necessary means to seek redress in the courts. Thus, we find that the Third District's holding on this issue is patently in express and direct conflict with the firmly grounded principles embedded in Florida's no-fault insurance scheme.

3. Confession of Judgment
Moreover, Allstate's payment after suit was filed operates as a confession of judgment, further entitling Ivey to attorneys's fees. See Wollard v. Lloyd's and Companies of Lloyd's, 439 So.2d 217, 218 (Fla.1983); see also United Auto. Ins. Co. v. Zulma, 661 So.2d 947 (Fla. 4th DCA 1995). In Wollard, we held that where an insurer pays policy proceeds after suit has been filed but before judgment has been rendered, the payment of the claim constitutes *685 the functional equivalent of a confession of judgment or verdict in favor of the insured, thereby entitling the insured to attorney's fees. In the present case, the Third District acknowledged that "[w]ithin 30 days of the deposition [of Ivey's doctor], Allstate paid the doctor the additional monies owed him. Ms. Ivey continued this action against Allstate under the theory that Allstate's failure to pay the original bill in full constituted a wrongful withholding of benefits requiring her to seek the services of an attorney." Allstate, 728 So.2d at 283. It is therefore obvious that Allstate voluntarily paid Ivey's claim only after the lawsuit was filed and without any type of settlement agreement which would preclude her from recovering her attorney's fees. Thus, we conclude that the district court erred in failing to find that Allstate's payment of the remainder of the claim constituted a confession of judgment, entitling Ms. Ivey to recovery of her attorney's fees. The decision below would incorrectly deny application of statutory attorney's fees when insurers come to the realization during litigation that a denial of benefits has been incorrect.

CONCLUSION
The decision below erroneously creates new appellate jurisdiction, and in doing so expressly and directly conflicts with multiple decisions involving multiple areas of Florida law. The decision also impacts the insurance statutory scheme and nearly thirty years of Florida jurisprudence. Accordingly, we quash the decision below, and hold that Ms. Ivey is entitled to recover the attorney's fees she incurred in the prosecution of the legal action.
It is so ordered.
SHAW, PARIENTE and QUINCE, JJ., concur.
ANSTEAD, J., concurs in result only.
WELLS, C.J., and HARDING, J., dissent with opinions.
WELLS, C.J., dissenting.
I dissent and would discharge jurisdiction in this case as improvidently granted.
I do not find there to be a conflict with Haines City Community Development v. Heggs, 658 So.2d 523 (Fla.1995), in that the district court determined that there was a departure from the essential requirements of law. Moreover, I conclude, pursuant to the intent of article V of the Florida Constitution, which is that the district courts are the final courts of appeal, that this Court should not disturb such a determination by a district court.
In respect to the substantive issue, the district court's decision is based upon common sense and fairness under the particular facts of the case, and I would decline jurisdiction.
HARDING, J., dissenting.
Jurisdiction was improvidently granted in this case. I do not believe that the cases in question are in conflict. I would discharge.
WELLS, C.J., concurs.
NOTES
[1] The HICF did reflect, however, that she had received two injuries.