933 So.2d 613 (2006)
In re: ASBESTOS LITIGATION.
Mobil Corporation, et al., Petitioners,
v.
Joseph Mallia, et al., Respondents.
No. 3D05-2194.
District Court of Appeal of Florida, Third District.
June 28, 2006.
*614 Ruden, McClosky, Smith, Schuster, & Russell, and John H. Pelzer, Fort Lauderdale, and Susan Cole and Stephen Smith, for petitioners.
David M. Lipman, Miami, and Jonathan Ruckdeschel, for respondents.
*615 Before RAMIREZ, CORTIÑAS, and ROTHENBERG, JJ.
ROTHENBERG, Judge.
The petitioners, defendants in asbestos cases pending in Miami-Dade Circuit Court, seek certiorari review and quashal of an order by the circuit court exempting nonmalignant asbestos litigants who had received trial dates prior to July 1, 2005, from the requirements of the newly enacted "Asbestos and Silica Compensation Fairness Act" ("ASCFA" or "Act").
Section 774.204(2) of ASCFA provides, in part, that:
A person may not file or maintain a civil action alleging a nonmalignant asbestos claim in the absence of a prima facie showing of physical impairment as a result of a medical condition to which exposure to asbestos was a substantial contributing factor.
§ 774.204(2), Fla. Stat. (2005)(emphasis added). In addition, section 774.205(2), Florida Statutes (2005), provides, in part, that:
A plaintiff in a civil action alleging an asbestos or silica claim must include with the complaint or other initial pleading a written report and supporting test results constituting prima facie evidence of the exposed person's asbestos-related or silica-related physical impairment.. . . For any asbestos or silica claim pending on the effective date of this act, the plaintiff must file the report and supporting test results at least 30 days before setting a date for trial.
The circuit court was asked to address the applicability of ASCFA to those cases which had already been set for trial when ASCFA became effective on July 1, 2005. After allowing the parties to brief the issue and conducting a hearing, the trial court issued an order, finding that "those plaintiffs whose cases were filed prior to July 1, 2005, and who also had trial dates set as of July 1, 2005, are not required to file written reports and supporting test results constituting prima facie evidence of asbestos-related or silica-related impairment."
In their petition, the nonmalignant asbestos defendants argue that the statutory requirement of making a "prima facie showing of physical impairment" is clear, direct, and unambiguous. They, therefore, assert that the trial court's order, which dispenses with this statutory requirement for those plaintiffs who had already received trial dates prior to July 1, 2005, will result in material injury to the defendants, which cannot be remedied on plenary appeal, because it interferes with their "substantive right under the Act not to be subject to trial" unless and until the plaintiffs comply with this statutory requirement. In response, the plaintiffs argue that ASCFA is ambiguous; the trial court correctly interpreted the conflicting provisions of ASCFA; and the trial court did not depart from the essential requirements of the law because it did not violate a clearly established principle of law.
Certiorari is limited to those instances where the court did not afford procedural due process or departed from the essential requirements of the law. Allstate Ins. Co. v. Kaklamanos, 843 So.2d 885, 889 (Fla.2003); Ivey v. Allstate Ins. Co., 774 So.2d 679, 682 (Fla.2000). In the instant case, the defendants have not alleged that the trial court failed to afford them procedural due process. Therefore, the issue we are asked to address is whether the trial court departed from the essential requirements of the law.
The Florida Supreme Court has explained that:
[T]he departure from the essential requirements of the law necessary for the issuance of a writ of certiorari is something *616 more than a simple legal error. A district court should exercise its discretion to grant certiorari review only when there has been a violation of a clearly established principle of law resulting in a miscarriage of justice.
Kaklamanos, 843 So.2d at 889. Moreover, the Florida Supreme Court specified that "`clearly established law' can derive from a variety of legal sources, including recent controlling case law, rules of court, statutes, and constitutional law." Id. at 890 (emphasis added).
Certiorari review is proper when it is alleged that the circuit court's interpretation of a statute violates clearly established law or when it fails to follow the dictates of a statute, and the error is sufficiently egregious as to result in a miscarriage of justice. In Kaklamanos, the Florida Supreme Court found that certiorari review was proper based upon its conclusion that the trial court had failed to apply the dictates of the personal injury protection statute and that this error constituted a violation of the clearly established law contained in the statute. Id. at 891; see also State v. Farino, 915 So.2d 685 (Fla. 2d DCA 2005)(granting certiorari review, determining that the circuit court had departed from the essential requirements of the law by failing to apply a statutory definition to a criminal act, thereby exempting from prosecution conduct clearly proscribed by the statute); State, Dep't of Children & Families v. Everette, 911 So.2d 119 (Fla. 3d DCA 2004)(granting certiorari review and finding that the trial court departed from the essential requirements of the law by requiring the Department of Children and Families to transport a defendant in its custody, where a statute placed that responsibility with the sheriff); Fassy v. Crowley, 884 So.2d 359 (Fla. 2d DCA 2004)(certiorari granted, determining that the trial court had departed from the essential requirements of the law when it applied a statutory standard of care in a lawsuit, despite the plain reading of the statute indicating that the standard of care did not apply); State, Dep't of Highway Safety & Motor Vehicles v. Possati, 866 So.2d 737 (Fla. 3d DCA 2004)(certiorari granted, concluding that the trial court departed from the essential requirements of the law by not following the clearly established dictates of a statute regarding the appropriateness of an alcohol breath test).
A finding that the trial court departed from a clearly established requirement of the law, by itself, is, however, insufficient to warrant certiorari review. The error must be sufficiently egregious or fundamental, resulting in a miscarriage of justice. See Kaklamanos, 843 So.2d at 890-91 (upholding the district court's granting of certiorari review of a circuit court's decision based upon its conclusion that the legal error was sufficiently egregious or fundamental to fall within the scope of its certiorari jurisdiction); Ivey, 774 So.2d at 682 (explaining that district courts should examine the seriousness of the trial court's error and only grant certiorari when the violation of the clearly established principle of law results in a miscarriage of justice); Haines City Cmty. Dev. v. Heggs, 658 So.2d 523, 531 (Fla.1995)(explaining that the court's discretion in exercising its certiorari jurisdiction should depend on the court's assessment of the gravity of the error, and that a court should only grant certiorari when it determines that the errors are sufficiently egregious or fundamental to merit the extra review and safeguard provided by certiorari).
In the instant case, we conclude that the trial court's ruling violates the clearly established law set forth in ASCFA. Section 774.204(2) of ASCFA *617 provides that a person may not file or maintain a nonmalignant asbestos claim in the absence of a prima facie showing of physical impairment. As the trial court's ruling is directed to those litigants who had already filed their lawsuits prior to the effective date of ASCFA, it is the "maintain" language in the statute which is relevant to the determination as to whether those litigants must satisfy the prima facie evidence requirement. As the language of section 774.204(2) is clear and unambiguous, that a person may not maintain a nonmalignant asbestos claim in the absence of a prima facie showing of physical impairment, we conclude that the trial court departed from the essential requirements of the law in failing to apply the requirement of the statute to those plaintiffs who had already received trial dates when the statute became effective.
Section 774.205(2) provides that plaintiffs filing new complaints must include the required prima facie evidence with their complaint, while plaintiffs who already have claims pending as of the effective date of ASCFA must file the evidence at least thirty days before setting a trial date. While the statute does not specify when the plaintiffs, who already had trial dates when ASCFA became effective, must file their prima facie evidence of physical impairment, the statute does not exempt these plaintiffs from making the prima facie showing required pursuant to the statute. Thus, section 774.204(2)'s prima facie requirement applies to these plaintiffs as well. As the statute does not specify a time frame for plaintiffs, who already had their cases set for trial, to comply with the requirement, the trial court may exercise its discretion in deciding when those plaintiffs must make their prima facie showing. The trial court, however, lacks the authority to waive the statutory requirement altogether.
Our conclusion is supported by section 774.202, which clearly states the purpose of ASCFA:
It is the purpose of this act to:
(1) Give priority to true victims of asbestos and silica, claimants who can demonstrate actual physical impairment caused by exposure to asbestos or silica;
(2) Fully preserve the rights of claimants who were exposed to asbestos or silica to pursue compensation if they become impaired in the future as a result of the exposure;
(3) Enhance the ability of the judicial system to supervise and control asbestos and silica litigation; and
(4) Conserve the scarce resources of the defendants to allow compensation to cancer victims and others who are physically impaired by exposure to asbestos or silica while securing the right to similar compensation for those who may suffer physical impairment in the future.
As one of the methods of accomplishing these purposes, the legislature chose to require plaintiffs to make the prima facie showing set forth in section 774.204(2). This requirement clearly serves the purpose of providing priority to plaintiffs who can demonstrate physical impairment caused by exposure to asbestos. Exempting those plaintiffs who have already had their cases set for trial from satisfying the requirements of the statute would, on the other hand, do violence to the statute's stated purpose. The trial court indicated in its order that there are currently 460 cases set for trial. Thus, under the trial court's order there are 460 plaintiffs who would be allowed to proceed without having to make a prima facie showing of physical impairment. Under the existing court order, plaintiffs who cannot make the necessary prima facie showing would be permitted to proceed to trial, "clog up" the court's busy trial docket, limit the access *618 of current and future plaintiffs who make the requisite prima facie showing, and deny those plaintiffs who do make the requisite showing priority in obtaining a trial setting. To allow such a large number of cases to proceed without complying with the prima facie requirement would, therefore, violate the clear purpose of the statute, which is to give priority to plaintiffs who can demonstrate actual physical impairment.
Our conclusion is also supported by the "whereas" clauses in the preamble of the bill that enacted ASCFA:
WHEREAS, exposure to asbestos has created a flood of litigation in state and federal courts . . .,
asbestos personal injury litigation can be unfair and inefficient, imposing a severe burden on litigants and taxpayers alike. . .,
the inefficiencies and societal costs of asbestos litigation have been well documented. . .,
the extraordinary volume of nonmalignant asbestos cases continues to strain state courts. . .,
the cost of compensating exposed individuals who are not sick jeopardizes the ability of defendants to compensate people with cancer and other serious asbestos-related diseases, now and in the future. . .,
estimates show that between 60,000 and 128,000 American workers already have lost their jobs as a result of asbestos-related bankruptcies and that the total number of jobs that will be lost due to asbestos-related bankruptcies will eventually reach 432,000. . .,
asbestos litigation is estimated to have cost over $54 billion, with well over half of this expense going to attorney's fees and other litigation costs. . .,
concerns about statutes of limitations may prompt claimants who have been exposed to asbestos or silica but who do not have any current injury to bring premature lawsuits in order to protect against losing their rights to future compensation should they become impaired. . .,
punitive damage awards unfairly divert the resources of defendants from compensating genuinely impaired claimants. . .,
the Legislature finds that there is an overpowering public necessity to defer the claims of exposed individuals who are not sick in order to preserve, now and for the future, defendants' ability to compensate people who develop cancer and other serious asbestos-related and silica-related injuries and to safeguard the jobs, benefits, and savings of workers in this state and the well-being of the economy of this state. . . .
H.R. 1019, 2005 Leg. (Fla.2005).
The Amendment Notes also reflect that the Act is to apply to all civil claims in which trial has not commenced:
This act shall take effect July 1, 2005. Because the act expressly preserves the right of all injured persons to recover full compensatory damages for their loss, it does not impair vested rights. In addition, because it enhances the ability of the most seriously ill to receive a prompt recovery, it is remedial in nature. Therefore, the act shall apply to any civil action asserting an asbestos claim in which trial has not commenced as of the effective date of this act

(emphasis added).
To require all plaintiffs to comply with the prima facie evidence requirement serves the intent of the statute by preserving the ability of defendants to compensate people who have serious asbestos-related *619 injuries, and deferring the claims of those who are not currently sick.[1]
Thus, we conclude that the plain language of sections 774.204(2) and 774.205(2), the stated purposes of ASCFA, and the Legislature's intent in enacting ASCFA, mandate a finding that plaintiffs who already have trial dates set, must also comply with the requirement of making a prima facie showing of physical impairment before they may proceed to trial, and thus the trial court deviated from the essential requirements of the law by ruling otherwise.
The dissent argues (1) that the petition for certiorari is premature; (2) that there is no case in controversy as the petition was not brought by an individual defendant; (3) that by requiring the 460 plaintiffs who had their cases set for trial prior to July 1, 2005, to comply with the clear dictates of the statute, would create confusion as to the status of those cases; and (4) that because the trial judge has "been effectively managing that division for years," this court should not interfere. In order to respond to these arguments, a brief explanation of just how these cases are handled in this jurisdiction, according to the lawyers who argued the petition before this court, is required.
Due to the large volume of asbestos personal injury cases in Miami-Dade County, a system was devised whereby these cases would be managed pursuant to omnibus orders. The omnibus order currently in effect is the Fourth Amended Omnibus Order On Trial Setting, Discovery And Product Identification In Personal Injury Asbestos Litigation (Revised November 2004)("Omnibus Order"). This Omnibus Order provides in part that:
It is the express intention and purpose of the Order that it manage and govern the timing and progress of the trial dockets . . . in asbestos personal injury litigation.
. . .
The Court will file in the In Re: Asbestos Litigation file all General or Omnibus Orders which rulings have application to more than one case pending before this Court. The rulings contained within these General or Omnibus Orders shall be applicable to all asbestos personal injury cases assigned to this Court unless otherwise specified in the Order.
Omnibus Order at 2-3 (emphasis added).
When the issue of how to proceed on the cases which had trial dates set before July 1, 2005, was raised, the trial court invited the parties to brief the issue and set the issue for a hearing. Numerous defendants filed notices of joinder and several defendants filed a memorandum of law to be considered by the trial court.
The dissent argues that the asbestos defendants lack standing and that the Omnibus Order is merely an advisory "order" because the order is a general order styled "In Re Asbestos." We disagree. The orders entered in the "In Re Asbestos" format are filed that way pursuant to the Omnibus Order, and are meant to be applicable to all asbestos cases and are binding rulings. See Gallagher v. Fibreboard *620 Corp., 641 So.2d 953, 954 (Fla. 3d DCA 1994)(noting that the omnibus orders were established as a result of the large number of asbestos cases filed in Miami-Dade County and thus, by administrative order of the chief judge, Judges Richard Fuller and Harold Vann "coordinated litigation and case management procedures, created a Master Docket, and issued various omnibus orders to govern litigation applicable to all asbestos cases"). Thus, in Gallagher, this court held that because the "plaintiff's counsel was on notice that he was bound and governed by the Omnibus Order," failure to comply with the procedure provided was no different than failing to follow a regular rule of civil procedure. Id. at 955. We, therefore, conclude that the Omnibus Order entered by the trial court was and is binding upon the 460 similarly situated plaintiffs and defendants who collectively have standing to seek review by this court.
The dissent suggests that our ruling will create confusion and fails to give deference to the ruling of the trial judge who has aptly presided over and managed these cases for several years. Quite frankly, our ruling is based upon a clear reading and intent of the law, which is to require a prima facie showing of physical impairment as a result of exposure to asbestos if a litigant wishes to maintain a civil action in a nonmalignant asbestos claim. See 774.204(2), Fla. Stat. (2005).

DOES THE ERROR MERIT CERTIORARI REVIEW?
In determining whether the trial court's error is sufficiently egregious or fundamental to merit certiorari review, we find the Florida Supreme Court's decision in Globe Newspaper Co. v. King, 658 So.2d 518 (Fla.1995), instructive. In Globe, the Florida Supreme Court found that it was proper for the district courts to grant certiorari review based upon a claim that the trial court departed from the essential requirements of the law by failing to conduct a hearing before allowing a plaintiff to seek punitive damages. Globe Newspaper, 658 So.2d at 520. Section 768.72 provides that, before a plaintiff may seek punitive damages, he or she must demonstrate by record evidence that there is a reasonable basis for the recovery of such damages. Id. at 519. The Florida Supreme Court concluded that, because the statute created a substantive legal right not to be subject to a punitive damages claim until the trial court makes a determination that there is an evidentiary basis for recovery of such a claim, certiorari review was appropriate to determine whether the trial court conducted the requisite inquiry. Id. at 520.
Similarly, in the instant case, we find that ASCFA creates a substantive legal right not to be subject to a trial until the required prima facie showing of physical impairment is made. Because the trial court's error interferes with this right by allowing plaintiffs to maintain their nonmalignant asbestos actions without making the statutorily required prima facie showing, it is sufficiently egregious and fundamental to result in a miscarriage of justice because it interferes with the defendants' rights not to be subject to a trial unless a prima facie showing can be made.[2] Additionally, *621 since there are 460 plaintiffs and numerous defendants affected by the trial court's ruling, and because of the effect the ruling may have on other plaintiffs and defendants, the error is sufficiently egregious to merit certiorari review.
We, therefore, grant the defendant's petition for writ of certiorari and quash the circuit court's order which found that plaintiffs who have trial dates set as of July 1, 2005, need not make the prima facie showing required by section 774.204(2).
Petition granted; order quashed.
CORTIÑAS, J., concurs.
RAMIREZ, J. (dissenting).
I respectfully dissent because I do not agree that the trial court's order departed from the essential requirements of law.
Simply stated, section 774.205(2), Florida Statutes (2005), specifically provides that for any pending claims, "the plaintiff must file the report and supporting test results at least 30 days before setting a date for trial." (emphasis added). The majority would apply the statute to include cases whose trials have already been set. If that were the case, the statute should read "at least 30 days before trial."
When considering such an extraordinary remedy as a writ of certiorari, the standard is not de novo review, or abuse of discretion, but a "departure from the essential requirements of law." As the Florida Supreme Court stated in Haines City Cmty. Dev. v. Heggs, 658 So.2d 523, 527 (Fla.1995):
The required "departure from the essential requirements of law" means something far beyond legal error. It means an inherent illegality or irregularity, an abuse of judicial power, an act of judicial tyranny perpetrated with disregard of procedural requirements, resulting in a gross miscarriage of justice. The writ of certiorari properly issues to correct essential illegality but not legal error.
In the case before us, not only there has been no departure from the essential requirements of law, there is not even a real case and controversy for us to decide.
The applicability of the statute came up pursuant to a Memorandum filed by General Electric. The trial court then invited the parties to brief the issue. The litigants did not file or serve any motion. The petition before us mentions no petitioner or respondent. As of the date of oral argument, it had yet to be applied to any particular case or litigant. Chief Judge Farina's order was, at best, an advisory opinion. I fail to see how such an advisory opinion can be a departure from the essential requirements of law.
We do not recognize the appealability of an order on attorney's fees in the absence of an actual award of fees, see Ocean Club Cmty. Ass'n, Inc. v. Curtis, 934 So.2d 522, 2005 WL 2993845 (Fla. 3d DCA Nov. 9, 2005)("the matter is not ripe for consideration"), yet we are today granting the extraordinary remedy of certiorari in the absence of an actual case, a litigant, a factual scenario, or any other indicia of a case or controversy. See Merkle v. Guardianship of Jacoby, 912 So.2d 595, 599 (Fla. 2d DCA 2005)("Florida's appellate courts reserve the exercise of judicial power for cases involving actual controversies. With limited exceptions not material here, Florida's appellate courts are not authorized to issue advisory opinions.") (citation omitted).
In Cape Canaveral Hosp., Inc. v. Leal, 917 So.2d 336 (Fla. 5th DCA 2005), the court concluded that a petition for certiorari *622 is premature where a party has simply been ordered to produce allegedly privileged documents for an in camera inspection by stating: "[o]ne essential characteristic of an effective application for relief by way of certiorari is that the threatened harm cannot be undone." Id. at 340. The threatened harm complained of heresubjecting a defendant to trial without first making a prima facie showingas allegedly threatened in the interlocutory, advisory order under appeal, may likewise be undone by the trial court when a specific litigant with a specific case comes before the court for trial.
Because we do not have any litigants before us, we cannot determine what has traditionally been considered a threshold issue: standing. See United Auto. Ins. Co. v. Diagnostics of South Florida, Inc., 921 So.2d 23, 25 (Fla. 3d DCA 2006). "To satisfy the requirement of standing, the plaintiff must show that a case or controversy exists between the plaintiff and the defendant." Id. (citing Godwin v. State, 593 So.2d 211 (Fla.1992)). See also Montgomery v. Department of Health and Rehab. Servs., 468 So.2d 1014 (Fla. 1st DCA 1985).
The majority attempts to justify the lack of a litigant, or the lack of a case or controversy, by quoting from the Fourth Amended Omnibus Order On Trial Setting, Discovery and Product Identification in Personal Injury Asbestos Litigation ("Omnibus Order"). That Order specifically states: "[e]ach Defendant may file Master Answers, Affirmative Defenses, and Motions to Dismiss directed to the Plaintiffs' Master Complaint(s)." I find nothing in the Omnibus Order dispensing with the requirement for motions as a procedure for resolving issues that may come before the court. Likewise, there is nothing in Gallagher v. Fibreboard Corp., 641 So.2d 953 (Fla. 3d DCA 1994), that endorses advisory opinions in the absence of a motion.
Furthermore, I do not believe the trial court's order does violence to the language of the statute. The majority reasons that, because the statute does not specifically exempt those plaintiffs who already have trial dates, they are therefore included in the application of the statute. Neither the statute nor the majority opinion gives any guidance as to how the trial court should handle the 460 cases that have already been set for trial. Are they automatically off the trial docket, or do they conditionally keep their status, but are prevented from starting the trial until they make their prima facie showing? I assume these cases are not subject to dismissal because the statute addresses those cases that had been filed prior to the effective date of the statute. These litigants are only required to make their showing "at least 30 days before setting a date for trial." See § 774.205(2), Fla. Stat. (2005). But as the majority has decided to interpret the statute with its advisory opinion, it may want to give further guidance. When should these litigants make their prima facie showing?
Despite the trial court's finding that the defendant's interpretation of the statute would cause a judicial log jam, the majority opinion finds, with no record support, that the trial court's order would "`clog up' the court's busy trial docket, limit the access of current and future plaintiffs who make the requisite prima facie showing, and deny those plaintiffs who do make the requisite showing, priority in obtaining a trial setting." Thus, the majority opinion purports to know what's best for the trial court as to how to run the asbestos division, despite the fact that Chief Judge Farina has been effectively managing that division for years. In any event, the argument that more resources will be exhausted *623 has never been recognized as a proper basis for the extraordinary remedy of certiorari jurisdiction. See Miami Physical Therapy Assocs., Inc. v. Savage, 632 So.2d 114, 115 (Fla. 3d DCA 1994)(stating that "the mere expense and inconvenience of litigation does not constitute harm sufficient to permit certiorari review, even if the order departs from the essential requirements of the law").
Appellate courts generally defer case management issues to trial judges. I suspect that it is our court that is going to "clog up" the asbestos division by indicating what is a more effective case management interpretation of the statute.
Furthermore, as the trial court's order succinctly indicates, the defendants' interpretation was explicitly rejected by legislature when it discarded an earlier draft that required a prima facie showing "at least 30 days before trial." Thus, I find the majority's reliance on legislative intent unpersuasive.
I disagree with the majority that Globe Newspaper Co. v. King, 658 So.2d 518 (Fla.1995), lends any support for our advisory opinion. Section 768.72, Florida Statutes (1993), did not attempt to make its application retroactive and there was no ambiguity. The Florida Supreme Court held that section 768.72 created "a substantive legal right not to be subject to a punitive damages claim and ensuing financial worth discovery until the trial court makes a determination that there is a reasonable evidentiary basis for recovery of punitive damages." Globe Newspaper, 658 So.2d at 519 (emphasis added). In my view, it is clear that it is this discovery the "cat out of the bag" injury recognized in Allstate Ins. Co. v. Langston, 655 So.2d 91 (Fla.1995)that provides the basis for allowing certiorari review. The expense or inconvenience of going to trial, on the other hand, has never been so recognized. See Miami Physical Therapy, 632 So.2d at 115.
I would therefore deny the writ of certiorari.
NOTES
[1] In addition to deferring the claims of persons who are not sick, the legislature also addressed the concern on the opposite hand that such persons' claims might be barred by the statute of limitations if they later become sick. It dealt with this concern by enacting section 774.206(1), which provides in part that the limitations period on an asbestos claim does not begin to run until the exposed person discovers, or through the exercise of reasonable diligence should have discovered, that he or she is physically impaired by an asbestos-related condition.
[2] This interference with the defendants' rights not to be subject to a trial until the prima facie showing is made also satisfies the jurisdictional requirement that the error must result in material injury that cannot be corrected on post-judgment appeal. See Fassy, 884 So.2d at 363 (determining that circuit court's error, in not requiring a plaintiff to comply with medical malpractice pre-suit notice requirements, would result in material injury to the defendants that could not be corrected on post-judgment appeal, because a post-judgment appeal would be inadequate to correct the error of subjecting the defendants to a trial that the pre-suit procedures were intended to prevent).