975 So.2d 1247 (2008)
SOUTHERN GROUP INDEMNITY, INC., Petitioner,
v.
HUMANITARY HEALTH CARE, INC., as assignee of Martha Lopez, Respondent.
No. 3D06-2788.
District Court of Appeal of Florida, Third District.
March 12, 2008.
David P. Pakula, Pembroke Pines, for petitioner.
Stuart B. Yanofsky, Hollywood, for respondent.
Before WELLS, SHEPHERD, and ROTHENBERG, JJ.
Before GERSTEN, C.J., and COPE, GREEN, RAMIREZ, WELLS, SHEPHERD, SUAREZ, CORTIAS, ROTHENBERG, LAGOA and SALTER, JJ.

On Motion for Rehearing
ROTHENBERG, Judge.
We grant the appellee's motion for rehearing, withdraw our former opinion dated May 30, 2007, and substitute the following opinion in its stead:
Southern Group Indemnity, Inc. ("Southern Group") petitions this Court for a writ of certiorari, seeking to quash the opinion of the circuit court sitting in its appellate capacity, which affirmed the county court's order granting summary judgment in favor of Humanitary Health Care, Inc. ("Humanitary Health") on its request for a declaratory judgment. We grant the petition.
Following an automobile accident, Martha Lopez ("Lopez") received medical services from Humanitary Health. She assigned her rights under an automobile insurance policy providing personal injury protection ("PIP") benefits issued by Southern Group to Humanitary Health. Southern Group denied benefits on the basis that the claimed medical services did not exceed the $2,000 deductible under the policy.
On December 29, 2003, Humanitary Health filed suit against Southern Group in county court, seeking to collect PIP benefits. Count I was for breach of contract, alleging that Southern Group failed to pay the benefits within thirty days as required by paragraph 627.736(4)(b), Florida Statutes (2003).[1] In Count II, Humanitary Health requested that the circuit court issue a declaratory judgment providing that it was entitled to presuit disclosure of Southern Group's PIP payout logs. Humanitary Health asserted that pursuant to paragraph 627.736(6)(d), as part of its presuit investigation, it requested information *1249 from Southern Group, including a PIP payout log, which would have allowed it to determine whether the medical bills it submitted to Southern Group were properly applied to the deductible, but that Southern Group failed to submit these documents. Humanitary Health asserted that paragraph 627.736(6)(d) requires an insurer, upon a request from the injured person, to furnish the PIP payout logs presuit, and that because Lopez executed an assignment of benefits, it was placed in Lopez's shoes.
In November 2004, Humanitary Health filed a motion for partial summary judgment as to its declaratory judgment count. It argued that Southern Group "has now provided a PIP payout sheet as part of its response to Plaintiff's First Request to Produce. . . . In doing so, Defendant has essentially confessed judgment, entitling Plaintiff to recover attorney's fees and costs."
In March 2005, Southern Group moved for summary judgment. As to the breach of contract count, Southern Group argued that Humanitary Health's bill for medical services was applied to the deductible. As to the declaratory judgment count, Southern Group argued that under paragraph 627.736(6)(d), it did not have a duty to produce the PIP logs presuit because this section does not refer to PIP logs or any other internal documents prepared by the insurance carrier, and that paragraph 627.736(6)(b) only refers to documents from physicians, hospitals, clinics or other medical institutions.
The county court judge granted Humanitary Health's motion for partial summary judgment; denied Southern Group's motion for summary judgment; and reserved jurisdiction to award attorney's fees.
Southern Group appealed the county court's order granting partial summary judgment in favor of Humanitary Health to the circuit court, appellate division. The circuit court issued a written opinion affirming, which provides, in part, "[i]n the event an assignee is forced to file a lawsuit because of an insurance company's pre-litigation refusal to provide the log, a post-litigation production of the document is tantamount to a confession of judgment."[2] The court also concluded that "[w]hile ß 627.736(6)(d) does not specifically identify the PIP log as a document that must be produced by an insurer presuit, . . . the statutory language is broad enough to encompass the PIP log." Southern Group filed a Motion for Rehearing or Clarification, which the circuit court denied. Thereafter, Southern Group filed its petition for writ of certiorari in this Court.
The issue presented in this petition is whether the circuit court, acting in its appellate capacity, applied the correct law when it determined that pursuant to paragraph 627.736(6)(d), Florida Statutes (2003), an insurer is required to provide in presuit discovery its payout log to its insured and/or its insured's assignee, which in this case is the insured's medical provider.
Section 627.736, Florida Statutes (2003), provides personal injury protection to the various persons identified in subsection (1). Subsection (6) of the statute pertains to the obligation of the various entities to provide discovery to the insurer. Paragraph 627.736(6)(a) pertains to the obligation of the insured's employer to provide information to the insurer. Paragraph 627.736(6)(c) provides a mechanism for the insurer to petition the court to resolve disputes regarding the insurer's right to the requested discovery, and paragraph *1250 627.736(6)(d) allows the insured to obtain a copy of all information obtained by the insurer through this process. Specifically, paragraph 627.736(6)(d), Florida Statutes (2003), provides as follows:
(6) DISCOVERY OF FACTS ABOUT AN INJURED PERSON; DISPUTES.Äî
. . . .
(d) The injured person shall be furnished, upon request, a copy of all information obtained by the insurer under the provisions of this section, and shall pay a reasonable charge, if required by the insurer.
Humanitary Health, standing in the shoes of the insured, argued below that pursuant to paragraph 627.736(6)(d), it was entitled to a copy of Southern Group's payout log presuit. The circuit court agreed that paragraph 627.736(6)(d) was applicable and, while recognizing that the statute did not expressly require the insurer to provide its PIP payout log to the insured, concluded that the statute is broad enough to include it.
Humanitary Health's arguments before this Court are that the circuit court correctly interpreted paragraph 627.736(6)(d), and that whether we agree or disagree with the circuit court's interpretation is not dispositive, as mere disagreement with the appellate court's interpretation of an applicable statute is not a sufficient basis for granting second-tier certiorari review. While we completely agree with Humanitary Health's premise, we disagree with its conclusion. We do not merely disagree with the circuit court's interpretation of paragraph 627.736(6)(d), we conclude that the statute is completely inapplicable.
In Haines City Community Development v. Heggs, 658 So.2d 523, 528 (Fla. 1995), the Florida Supreme Court held that the proper inquiry under second-tier certiorari review is whether the circuit court afforded procedural due process and whether it applied the correct law. The Court, however, cautioned in Ivey v. Allstate Insurance Co., 774 So.2d 679 (Fla. 2000), that while the district courts are governed by a very narrow standard of review, discretionary use of its certiorari power must not be so narrowly applied as to deprive litigants and the public to essential justice. Ivey, 774 So.2d at 682-83. Thus, the seriousness of the error must be considered in determining whether the district court should exercise its discretion to correct an error. Heggs, 658 So.2d at 528.
In Ivey, the Florida Supreme Court concluded that the district court incorrectly expanded the scope of its certiorari review by granting review "merely [because it] disagreed with the circuit court's interpretation of the applicable law," 774 So.2d at 683, and noted that the district court's decision did not consider why the circuit court's decision constituted an application of the incorrect law. Id.
Because the circuit court misapplied the law, we conclude that certiorari is appropriate in this case. Subsection 627.736(6) does not provide for nor address the insured's right to access documents prepared internally by the insurer. As the insurer's PIP payout log is a document generated by the insurer and is not a document the insurer obtained pursuant to subsection 627.736(6), the circuit court, acting in its appellate capacity, applied the incorrect law by finding that: (1) paragraph 627.736(6)(d), Florida Statutes (2003), requires an insurer to provide its PIP payout log to an insured or the insured's assignee, presuit; and (2) that "[i]n the event an assignee is forced to file a lawsuit of an insurance company's pre-litigation refusal to provide the log, a post-litigation production of the document is tantamount to a confession of judgment."
*1251 We, therefore, grant Southern Group's petition and quash the decision rendered by the circuit court.

ON MOTION FOR REHEARING EN BANC
PER CURIAM.
Denied.
GERSTEN, C.J., and COPE, GREEN, WELLS, SHEPHERD, CORTIAS, ROTHENBERG, LAGOA and SALTER, JJ., concur.
RAMIREZ, J. (dissenting).
I dissent from our denial of rehearing en banc based on Ivey v. Allstate Insurance Company, 774 So.2d 679 (Fla.2000), which was eerily similar to our current case. Ivey was also a suit seeking payment of PIP benefits under section 627.736, Florida Statutes (1995). The litigation stemmed from confusion as to whether Ivey was seeking recovery for one or two accidents. When Allstate realized that Ivey had received treatment for two injuries, it finally paid the additional amount to which the doctor was actually entitled and for which Ivey had initially submitted a claim.
Both the county and the circuit courts determined that Ivey was entitled to attorney's fees pursuant to sections 627.736(8) and 627.428(1), Florida Statutes (1995), because Allstate had conceded and paid the additional amount actually due and owing. This Court granted certiorari and reversed the circuit court's appellate decision, reasoning that, "[b]ecause Allstate did not pay the entire claim due to an error in the doctor's bill, its failure to pay said claim did not rise to that level of `wrongful' which would entitle Ms. Ivey to an award of attorney's fees." Allstate Ins. Co. v. Ivey, 728 So.2d 282, 283 (Fla. 3d DCA 1999), (citing sections 627.736(8), 627.428).
In quashing our decision, the Florida Supreme Court relied on Haines City Community Development v. Heggs, 658 So.2d 523, 525 (Fla.1995), which, according to Ivey, had narrowed the scope of common law certiorari jurisdiction. See Ivey, 774 So.2d at 681. The Florida Supreme Court quoted from Judge Altenbernd's opinion in Stilson v. Allstate Insurance Co., 692 So.2d 979, 982-83 (Fla. 2d DCA 1997):
Existing case law establishes that the departure from the essential requirements of the law necessary for the issuance of a writ of certiorari is something more than a simple legal error . . . In this case, the error occurred because the established law provided no controlling principle and the resulting monetary loss for Ms. Stilson, while unfortunate from her perspective, is not sufficient by itself to be a miscarriage of justice.
Both the county court and the circuit court were aware of the general law announced in [Government Employees Insurance Co. v.] Novak [453 So.2d 1116 (Fla.1984)]. Unfortunately, there is no Florida case squarely discussing an object intentionally thrown at a moving car. Without such controlling precedent, we cannot conclude that either court violated a "clearly established principle of law." At worst, both courts misapplied the correct law. Their error is not a matter of disobedience to the law, but simply a failure to logically extend Novak to reach the correct result under a new set of facts.
This case highlights a significant problem within our existing judicial structure. *1252 It is difficult for the law to evolve in unreported decisions issued in circuit court appeals. What evolution occurs may take conflicting approaches within the numerous circuits. As a result, there may never be "clearly established principles of law" governing a wide array of county court issues, including PIP issues.
There is a great temptation in a case like this one to announce a "miscarriage of justice" simply to provide precedent where precedent is needed. We do not interpret Heggs as giving this court that degree of discretion in a certiorari proceeding. Such an interpretation would invite certiorari review of a large number of the appellate decisions issued by circuit courts.
Ivey, 774 So.2d at 682-83.
The Florida Supreme Court then reasoned that this Court had merely disagreed with the circuit court's interpretation of the applicable law, which was an improper basis for common law certiorari. Id. at 683. Our decision today pays homage to the dictates of Ivey, but then states, "[w]e do not merely disagree with the circuit court's interpretation of paragraph 627.736(6)(d), we conclude that the statute is completely inapplicable." See supra p. 1250. (emphasis in original). Respectfully, this attempt at hairsplitting is a transparent circumvention of the dictates of the Florida Supreme Court's Ivey decision. How can the panel opinion find the statute inapplicable without interpreting its application? The same could have been said in Ivey, that Ivey should not recover fees, not only because this Court disagreed with the circuit court's interpretation of sections 627.736(8) and 627.428(1), but because those statutes were completely inapplicable.
Our case is precisely the type of situation referred to by Judge Altenbernd in Stilson, and quoted in Ivey, an area where "the established law provided no controlling principle." Ivey, 774 So.2d at 682. This Court has been tempted successfully "to announce a `miscarriage of justice' simply to provide precedent where precedent is needed." Stilson, 692 So.2d at 982. Until our decision, there was simply no reported case interpreting section 627.736(6)(d) not to apply to PIP payout logs.
As in Ivey, not only did our decision incorrectly expand the scope of certiorari by permitting a second appeal, but the result is also contrary to well established and recognized principles of existing PIP law. The purpose of the no-fault statutory scheme is to "provide swift and virtually automatic payment so that the injured insured may get on with his life without undue financial interruption." Ivey, 774 So.2d at 683-84 (quoting from Gov't Employees Ins. Co. v. Gonzalez, 512 So.2d 269, 271 (Fla. 3d DCA 1987)). In this case, the lower courts simply were requiring the insurance company to produce a log that contained the names of the medical providers and the amounts of their claims in the order received. The medical providers thereby can determine what expenses could be properly allocated to the PIP benefits deductible. The logs contain no privileged information.
We recently denied certiorari in Digital Medical Diagnostics v. United Auto. Insurance Company, 958 So.2d 505 (Fla. 3d DCA 2007), where after four years of litigation, the medical provider was blindsided with a motion for summary judgment asserting for the first time that the bills fell below the insured's deductible. By requiring insurance companies to produce these PIP payout logs, the courts below can prevent the insurance companies from stonewalling, like they did here and in Digital Medical Diagnostics, where the *1253 insurers would only produce the log after the medical providers filed suit.
The circuit court in this case wrote a well-reasoned five-page opinion explaining that "[t]he PIP statute is designed to provide speedy, uncomplicated resolution of issues between insurance companies and their insured/assignees." By quashing the circuit court's decision, we are forcing insureds and medical providers to file suit to obtain information readily available to insurers. If they can obtain these logs quickly and cheaply, everyone can determine where they stand in relation to the deductible, averting needless litigation with its concomitant fees and costs. The circuit court here concluded on the last page of its opinion as follows:
While ß 627.736(6)(d) does not specifically identify the PIP log as a document that must be produced by an insurer pre-suit, it is the opinion of this, and numerous other courts, that the statutory language is broad enough to encompass the PIP log. A single provider assignee may have no other means of gleaning such information from any other source but the PIP log. The assignee would likely not be privy to the identity of any other provider who may have provided service to the insured and submitted claims prior or subsequent to the assignees's own claim. Assignees should not be forced to rely on the representations of insurance companies without accompanying documentation.
In my view, this is a perfectly reasonable interpretation of the statute. The pertinent language of the statute is:
ß 627.736(6) Discovery of facts about an injured person; disputes.Äî
(d) The injured person shall be furnished, upon request, a copy of all information obtained by the insurer under the provisions of this section, and shall pay a reasonable charge, if required by the insurer.
Our opinion takes the view that "the insured's PIP payout log is a document generated by the insurer and is not a document the insurer obtained pursuant to subsection 627.736(6)." But what is the payout log if not "information obtained by the insurer?" It is merely a list of the bills received in chronological order. If the injured person were to request copies of these bills with the date stamps showing when they were received by the insurer, would this Court then find an obligation to produce them? While the language of the statute may not directly mention payout logs, it also does not explicitly exclude "documents generated by the insurer." The statutory term "information" should be interpreted expansively, as the term is not limited to documents.
It has long been the policy of this state to construe statutes governing insurance contracts to protect the public. Fla. Farm Bureau Cas. Ins. Co. v. Cox, 943 So.2d 823, 835 (Fla. 1st DCA 2006). More than fifty years ago, our state supreme court stated that "the public interest requires that a policy be interpreted by the courts in the manner most favorable to the insured, and also that statutes governing insurance contracts be liberally construed so as to protect the public." Praetorians v. Fisher, 89 So.2d 329, 333 (Fla.1956). As a party to a contract, the insurer here had a duty to avert loss and to mitigate costs and damages. The statute even provides for compensating the insurer for any costs, as the insured is required to "pay a reasonable charge, if required by the insurer." Our decision promotes neither the protection of the public nor the mitigation of costs and damages.
In conclusion, I do not believe our common law certiorari jurisdiction extends to a mere disagreement with the lower courts' *1254 interpretation, even if we label it "application" instead of "interpretation." Furthermore, the circuit court's opinion is more effective at promoting judicial economy and protecting the public from deception by insurance companies. Our decision, on the other hand, forces medical providers to file suit to obtain non-privileged information readily available to insurers. I therefore agree with the circuit court that the statute is broad enough to require pre-suit production of this information.
SUAREZ, J., concurs.
NOTES
[1] The statutory subdivisions (chapter, section, subsection, paragraph, etc.) are set forth in the Preface to the Florida Statutes. See Golf Channel v. Jenkins, 752 So.2d 561, 565 n. 3 (Fla.2000); Keller v. Newman Sons, Inc., 756 So.2d 120, 122 n. 2 (Fla. 3d DCA 2000).
[2] The circuit court's opinion explains that "[p]ayout logs disclose the order in which bills are received and how the deductible is applied to each bill."