692 So.2d 979 (1997)
Teresa STILSON, as next friend and parent of Curt Hopkins, a minor, Petitioner,
v.
ALLSTATE INSURANCE COMPANY, a corporation, Respondent.
No. 96-03580.
District Court of Appeal of Florida, Second District.
April 30, 1997.
*980 George J. Mitar of Goldberg, Goldstein & Buckley, P.A., Fort Myers, for Petitioner.
Ronald L. Arend of Ronald L. Arend, P.A., Fort Myers, and Bonita L. Kneeland of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for Respondent.
ALTENBERND, Judge.
Teresa Stilson seeks review of a circuit court order affirming a county court judgment. Although we conclude that the county court incorrectly granted summary judgment on this personal injury protection (PIP) coverage claim, we lack the authority to correct the county court's error because the circuit court's affirmance without a written opinion did not violate a "clearly established principle of law resulting in a miscarriage of justice." Haines City Community Dev. v. Heggs, 658 So.2d 523, 528 (Fla.1995) (quoting Combs v. State, 436 So.2d 93, 95-96 (Fla.1983)). See also Bonfiglio v. American Vehicle Ins. Co., 680 So.2d 1100 (Fla. 3d DCA 1996) (denying certiorari review of circuit court's per curiam affirmance of county court's ruling concerning arbitration of PIP claim).

I. THE ERRONEOUS SUMMARY JUDGMENT ON THE PIP CLAIM
Curt Hopkins, age seventeen, was driving his parents' car on January 20, 1993, at 4 p.m., in Cape Coral. He was driving approximately 40 miles per hour on a four-lane parkway with a grassy median. He noticed three teenage boys in the median. He had no verbal or nonverbal exchanges with the boys. As Curt drove by, a rock about the size of a softball came through the open driver's side window and struck him on the nose. He sustained lacerations that required stitches.
Curt's mother, Teresa Stilson, had insurance on the family car with Allstate Insurance Company. She filed a claim for PIP benefits, which Allstate denied. Thereafter, she filed a lawsuit in county court. Based on Curt's deposition, Allstate moved for summary *981 judgment. The county court granted the summary judgment on the theory that Curt's injuries did not "arise out of the use of a motor vehicle."
On appeal, two circuit court judges signed a per curiam affirmance without issuing a written opinion. A third circuit judge dissented without a written opinion. Thus, the decision cannot serve as precedent in another proceeding. See Department of Legal Affairs v. District Court of Appeal, Fifth District, 434 So.2d 310 (Fla.1983).
Statutory PIP coverage provides benefits for losses up to $10,000, as a result of bodily injury "arising out of the ownership, maintenance or use" of a motor vehicle. § 627.736(1), Fla. Stat. (1993). "Arising out of the ownership, maintenance or use" is not a test requiring proximate causation as employed in a negligence action. Instead, this clause must be construed liberally to extend coverage broadly whenever there is "some nexus" between the car and the injury. Government Employees Ins. Co. v. Novak, 453 So.2d 1116 (Fla.1984). For example, in Government Employees Ins. Co. v. Batchelder, 421 So.2d 59 (Fla. 1st DCA 1982), a child was injured when a beer bottle exploded inside the cab of a pickup truck. The court concluded that some nexus existed between the truck and the injury because the heat generated by the truck, as well as its movement, contributed to the bottle's explosion. 421 So.2d at 61. Thus, the pickup was more than a "mere physical situs" for that accident.
Injuries directly resulting from intentional acts or criminal behavior have presented courts with great difficulty in distinguishing between the "some nexus" test and the "mere physical situs" test. Novak involved a woman who was assaulted and killed by a man as she was preparing to drive away from her home. The assailant asked her for a ride and took the car after he shot her. The supreme court held that this incident was an accident from the insured victim's perspective, and that some nexus existed between the car and the injury because the assailant's motivation was based at least in part on a desire to use the automobile. 453 So.2d at 1119. Both before and after Novak, the district courts have struggled with this problem.[1]
It is difficult to extract a single litmus test from the cases set out in footnote 1. However, if the assailant's act resulting in the insured's injury is motivated by the existence of the car, e.g., if he wants to steal it or vandalize it, this seems to be an adequate nexus to invoke coverage. Likewise, if the momentum of a car acts in conjunction with an intentional act to cause an injury, the car is not a "mere physical situs" of the injury.
In this case, it appears virtually certain that one of the teenage boys threw a rock at the car. There is no evidence of any *982 animosity between the boy who may have thrown the rock and the victim. It is unclear whether the boy was aiming at the car or the driver, but it is very likely that the assailant's decision to throw the rock was motivated by the existence of the car and not solely because he was trying to hurt Curt Hopkins. At a minimum, this is an unresolved factual question.
Moreover, the speed of the car almost certainly contributed to the force of the rock and the resulting injury to Curt Hopkins' nose. Again, there is an unresolved issue of fact concerning the effect of the car's momentum. Thus, the county court should not have granted summary judgment in favor of Allstate, and the circuit court should not have affirmed on direct appeal.

II. THE LIMITED STANDARD OF REVIEW IN CERTIORARI
It is well-established that certiorari should not be used as a vehicle for a second appeal in a typical case tried in county court. Kennington v. Gillman, 284 So.2d 405 (Fla. 1st DCA 1973). When issuing this writ, district courts are guided by the bookend discussions in Combs v. State, 436 So.2d 93 (Fla.1983), and Haines City Community Development v. Heggs, 658 So.2d 523 (Fla.1995). In essence, the supreme court has cautioned the district courts to be prudent and deliberate when deciding to exercise this extraordinary power, but not so wary as to deprive litigants and the public of essential justice.
Both Combs and Heggs analyze the district courts' power over a "second appeal" certiorari in terms of discretion. Thus, these cases recognize that the district courts have jurisdictional power to review a circuit court decision in its appellate capacity. The controlling question is whether the discretion given to the district court under the limited standard of review provided by a petition for writ of common law certiorari is sufficient to authorize a remedy for the error committed in this case.
Existing case law establishes that the departure from the essential requirements of the law necessary for the issuance of a writ of certiorari is something more than a simple legal error. Both Combs and Heggs suggest that the district court should examine the seriousness of the error and use its discretion to correct an error "only when there has been a violation of [a] clearly established principle of law resulting in a miscarriage of justice."[2]Heggs, 658 So.2d at 528 (quoting Combs v. State, 436 So.2d 93, 95-96 (Fla. 1983)). In this case, the error occurred because the established law provided no controlling principle and the resulting monetary loss for Ms. Stilson, while unfortunate from her perspective, is not sufficient by itself to be a miscarriage of justice.[3]
Both the county court and the circuit court were aware of the general law announced in Novak. Unfortunately, there is no Florida case squarely discussing an object intentionally thrown at a moving car. Without such controlling precedent, we cannot conclude that either court violated a "clearly established principle of law." At worst, both courts misapplied the correct law. Their error is not a matter of disobedience to the law, but simply a failure to logically extend Novak to reach the correct result under a new set of facts.
This case highlights a significant problem within our existing judicial structure. It is difficult for the law to evolve in unreported decisions issued in circuit court appeals. What evolution occurs may take conflicting approaches within the numerous circuits. As a result, there may never be "clearly established principles of law" governing a wide array of county court issues, including PIP issues.
*983 There is a great temptation in a case like this one to announce a "miscarriage of justice" simply to provide precedent where precedent is needed. We do not interpret Heggs as giving this court that degree of discretion in a certiorari proceeding. Such an interpretation would invite certiorari review of a large number of the appellate decisions issued by circuit courts.
To the extent that existing law contains a solution to this problem, it exists in section 34.017(1), Florida Statutes (1995). That statute permits the county court to certify questions that may have statewide application and are of "great public importance" or will "affect the uniform administration of justice." This statute is similar to the constitutional provision allowing district courts to invoke the supreme court's jurisdiction by certifying a question of great public importance. Art. V, § 3(4), Fla. Const. In the district court context, however, the questions are presented in published opinions that serve as statewide precedent. In the county court context, the questions are presented in unpublished orders encouraging the district courts to create precedent. Thus, the concept of a question of great public importance in section 34.017 is somewhat broader than in the constitution. County court judges should understand that this provision can be used to create precedent needed for the orderly administration of justice in their courts. We rely upon them to screen their cases so that the district courts may receive an occasional appeal rather than numerous petitions for certiorari.[4]
We reluctantly conclude that we are faced with an error that we lack the discretion to correct.
Petition for writ of certiorari denied.
DANAHY, A.C.J., and LAZZARA, J., concur.
NOTES
[1] See, e.g., Hernandez v. Protective Cas. Ins. Co., 473 So.2d 1241 (Fla.1985) (coverage applied to motorist stopped for traffic infraction and injured during police officer's attempt to remove him from his car); Tuerk v. Allstate Ins. Co., 469 So.2d 815 (Fla. 3d DCA 1985) (coverage applied where insureds were shot because their vehicle was mistakenly identified as that belonging to a suspect in a narcotics investigation), review denied, 482 So.2d 347 (Fla.1986); Valdes v. Smalley, 303 So.2d 342 (Fla. 3d DCA 1974) (coverage applied to deceased pedestrian struck by object thrown from car traveling at 40 miles per hour), cert. discharged, 341 So.2d 975 (Fla.1976). Cf. Fortune Ins. Co. v. Exilus, 608 So.2d 139 (Fla. 4th DCA) (no coverage where insured driver stopped at stop sign and was shot by assailant who drove next to him and asked for directions), appeal dismissed, 613 So.2d 3 (Fla.1992); Parker v. Atlas Mut. Ins. Co., 506 So.2d 475 (Fla. 1st DCA 1987) (no coverage where insured was sitting in girlfriend's car and struck by a rock thrown through front window of car by unknown assailant). See also Doyle v. State Farm Mut. Auto. Ins. Co., 464 So.2d 1277 (Fla. 3d DCA 1985) (no coverage where insured was shot during attempted robbery as he exited his vehicle); Allstate Ins. Co. v. Famigletti, 459 So.2d 1149 (Fla. 4th DCA 1984) (no coverage where insured couple drove out of their driveway and were shot by neighbor); Florida Farm Bureau Ins. Co. v. Shaffer, 391 So.2d 216 (Fla. 4th DCA 1980) (no coverage for insured passenger shot after throwing a tangerine in the direction of the shooter's car), review denied, 402 So.2d 613 (Fla.1981); Stonewall Ins. Co. v. Wolfe, 372 So.2d 1147 (Fla. 4th DCA 1979) (no coverage for minor passenger in the back of a truck who was accidentally shot in the eye by a boy carrying a gun standing behind truck), cert. denied, 385 So.2d 762 (Fla. 1980); Feltner v. Hartford Accident and Indem. Co., 336 So.2d 142 (Fla. 2d DCA 1976) (no coverage for driver of assailants' car injured when assailant struck driver because he was transporting his daughter without permission).
[2] Certiorari can also be used to determine whether the petitioner received procedural due process in the circuit court appeal, but this case does not involve such an issue.
[3] If a district court makes a similar error when reviewing an appeal of a circuit court case involving $500,000 and issues a per curiam affirmance, the Florida Constitution precludes the aggrieved party from seeking certiorari review in the supreme court. As a result, it is difficult to declare a miscarriage of justice when the error causes a much smaller monetary loss for only a single litigant.
[4] We note that the record contains no indication that the plaintiff requested the county court to certify this issue, although it may well have warranted certification.