952 So.2d 599 (2007)
CITY OF CENTER HILL, Florida, etc., et al., Petitioner,
v.
Clyde McBRYDE, William Sander, et al., Respondent.
No. 5D06-3456.
District Court of Appeal of Florida, Fifth District.
March 23, 2007.
*600 Nicholas A. Shannin, Orlando, and Christopher V. Carlyle of The Carlyle Appellate Law Firm, The Villages, for Petitioners.
David A. Theriaque, S. Brent Spain and Timothy E. Dennis, of Theriaque Vorbeck & Spain, Tallahassee, for Respondents.
ORFINGER, J.
Petitioners, City of Center Hill ("City") and Sumter Cement Company, LLC ("SCC"), seek certiorari review of an order of the circuit court, sitting in its appellate capacity, which quashed an ordinance passed by the City annexing a parcel of SCC's real property into the City.[1] For the reasons explained hereafter, we deny the petition.
SCC owns 1,235 acres of land in unincorporated Sumter County. SCC petitioned the City to annex the property and to rezone it to permit the operation of a cement plant and lime rock quarry. Not surprisingly, Clyde McBryde and William Sander, the owners of nearby properties in unincorporated Sumter County, were not enthusiastic about SCC's proposal and actively opposed it, citing noise, pollution and *601 traffic concerns. Nonetheless, the City, after proper notice and a public hearing, approved the annexation ordinance and the rezoning request.
McBryde and Sander, unhappy with the City's decision, sought certiorari review in the circuit court, arguing that the annexed property was not reasonably compact as required by statute, as it created a 100-acre "pocket" of unincorporated territory ("the parcel") surrounded by hundreds of acres of municipal property. In response, the City and SCC argued that the annexed property was reasonably compact, as required by section 171.044, Florida Statutes (2005). After due consideration, the trial court granted certiorari and quashed the annexation ordinance, finding:
4. . . . [I]t is clear from the proposed annexation map that the annexation results in creation of an impermissible pocket of unincorporated property surrounded by hundreds of acres of municipal property. Whether "small" or "big," the City's voluntary annexation departs from the essential requirements of law because the annexed property creates a pocket. Furthermore, the [City's and SCC's] argument that the annexation does not create a pocket is not supported by competent substantial evidence because [their] own expert did not know what a pocket was for the purposes of annexation.
The City and SCC seek certiorari review of this determination.
Circuit courts review annexation ordinances by certiorari. § 171.081, Fla. Stat. (2005); see also County of Volusia v. City of Deltona, 925 So.2d 340, 343 (Fla. 5th DCA 2006). In this first-tier review, the circuit court determines (1) whether the lower tribunal afforded the parties procedural due process; (2) whether the essential requirements of the law were observed; and (3) whether the lower tribunal's action was supported by competent, substantial evidence. See Broward County v. G.B.V. Int'l., Ltd., 787 So.2d 838, 843 (Fla.2001); Haines City Cmty. Dev. v. Heggs, 658 So.2d 523, 530 (Fla.1995). The parties may then seek second-tier certiorari review of the circuit court decision in the district court.
Second-tier certiorari review is not a matter of right and is similar in scope to common law certiorari review. See Fla. Power & Light Co. v. City of Dania, 761 So.2d 1089, 1092-93 (Fla.2000). The scope of the district court's review on second-tier certiorari is limited to whether the circuit court (1) afforded the parties procedural due process, and (2) applied the correct law. G.B.V. Int'l Ltd., 787 So.2d at 843. In other words, this two-pronged, second-tier review is simply another way of determining if the lower court "departed from the essential requirements of law." Heggs, 658 So.2d at 530. A ruling constitutes a departure from the essential requirements of law when it amounts to "a violation of a clearly established principle of law resulting in a miscarriage of justice." Tedder v. Fla. Parole Comm'n, 842 So.2d 1022, 1024 (Fla. 1st DCA 2003) (quoting Combs v. State, 436 So.2d 93, 96 (Fla.1983)).
The district court may not review the record to determine whether the underlying agency decision is supported by competent, substantial evidence. City of Dania, 761 So.2d at 1093. Therefore, as a practical matter, the circuit court's ruling in most first-tier cases is conclusive because second-tier review is so limited. Id. at 1092. Certiorari cannot be used to grant a second appeal or redress mere legal error; rather, it provides a safety net to correct a miscarriage of justice when no other remedy is available. See Allstate Ins. Co. v. Kaklamanos, 843 So.2d 885, 889 *602 (Fla.2003); Stilson v. Allstate Ins. Co., 692 So.2d 979, 982 (Fla. 2d DCA 1997).
Property annexed by municipalities must be contiguous, reasonably compact, and not create enclaves. See City of Sunrise v. Broward County, 473 So.2d 1387, 1389 (Fla. 4th DCA 1985). Specifically, section 171.044(1), Florida Statutes (2005), provides that "[t]he owner or owners of real property in an unincorporated area of a county which is contiguous to a municipality and reasonably compact may petition the governing body of said municipality that said property be annexed to the municipality." "Any annexation proceeding in any county in the state shall be designed in such a manner as to ensure that the area will be reasonably compact." § 171.031(12), Fla. Stat. (2005). "Compactness" means the "concentration of a piece of property in a single area and precludes any action which would create enclaves, pockets, or finger areas in serpentine patterns."[2]Id. However, section 171.013 does not define the terms "pockets" or "finger areas in serpentine patterns." Instead, the only definition of the term "pockets," in the context of annexation compactness, was provided by this Court in City of Sanford v. Seminole County, 538 So.2d 113 (Fla. 5th DCA 1989). In that case, the circuit court determined that an annexation was impermissible because the proposed annexation "tend[ed] to create pockets of unincorporated property. . . ." Id. at 114. On review, this Court recognized that the annexation statute did not define the term "pockets." Using the rules of statutory construction, this Court concluded that a pocket is "a small isolated area or group." Id. at 115.
The City and SCC argue that the circuit court "vetoed" the City's annexation ordinance based on an erroneous interpretation of the term "pockets." They contend that the circuit court failed to follow the definition of the term adopted in City of Sanford, the single case defining that term. Specifically, the City and SCC argue that the circuit court applied a strained interpretation of the term "pockets" to the parcel, a 100-acre parcel that is neither "small" nor "isolated."
In its order, the circuit court, while acknowledging the City of Sanford decision, determined that whether "big" or "small," the City's proposed annexation of SCC's property improperly created a pocket. The City and SCC argue that the circuit court misapplied the law in reaching this conclusion. They contend that because the parcel, totaling almost one hundred acres, is "big," it is not, by definition, a pocket as defined in City of Sanford, which *603 must be "small" and "isolated." We disagree.
The issue of whether a parcel of property is "small" and "isolated" is relative to, and necessarily dependent upon, the size and configuration of the parcel and the surrounding municipal property. Size, be it small or large, is a relative term that can only be determined in relation to something else. Although we said in City of Sanford that a pocket is "a small isolated area or group," we did so recognizing that whether a parcel is small and isolated must be determined in relationship to the overall scope and configuration of the parcel in question and the surrounding municipal property. The statutory requirement that pockets not be created by annexations was intended to insure that no vestiges of unincorporated property be left "in a sea of incorporated property." Alison Yurko, A Practical Perspective About Annexation in Florida-Making Sense of Florida Statutes Chapters 164 and 171 in 2003 and Beyond, 32 Stetson L.Rev. 517, 533 (2003). Given the configuration of the City, SCC's property, and the parcel, that is precisely what would occur here.[3]
Should the annexation proceed, an impermissible pocket, albeit one of approximately one hundred acres, would be created. Given the scope of the overall annexation and the configuration of the properties, the parcel is, relatively speaking, small and isolated.[4] Although in absolute terms the 100-acre parcel is not insignificant, relative to the 1,235 acre annexation, a pocket is created.[5] We conclude that the circuit court's order properly applied the statutory requirement that annexations be compact.
CERTIORARI DENIED.
PLEUS, C.J., and TORPY, J., concur.
NOTES
[1] The circuit court also quashed an ordinance rezoning the subject property (Ordinance 05-17), and an ordinance granting SCC a conditional use permit authorizing the annexed property to be used as a limerock mine and cement plant (Ordinance 05-18). However, the City and SCC only challenge that portion of the circuit court order quashing the annexation ordinance (Ordinance 05-07).
[2] In City of Sunrise v. Broward County, 473 So.2d 1387, 1388 (Fla. 4th DCA 1985), the court explained the purpose of the compactness requirement:

In order to understand the concepts of compactness and the prohibition against the creation of enclaves in the context of annexation proceedings, it is helpful to consider the general purpose and goals of a municipal corporation as described by the attorney general in his opinion at 077-18, quoting from 56 Am.Jur.2d Municipal Corporations, Etc. § 69:
The legal as well as the popular idea of a municipal corporation in this country, both by name and use, is that of oneness, community, locality, vicinity; a collective body, not several bodies, a collective body of inhabitants-that is, a body of people collected or gathered together in one mass, not separated into distinct masses, and having a community of interest because residents of the same place, not different places. So, as to territorial extent, the idea of a city is one of unity, not of plurality; of compactness or contiguity, not separation or segregation.
1977 Op. Att'y. Gen. Fla. 077-18, (February 18, 1977) at p. 38.
(Emphasis in original).
[3] McBryde and Sander aptly describe the unincorporated parcel as looking like a balloon on a string, should the annexation proceed.
[4] "It isn't the size that counts so much as the way things are arranged." E.M. Forster, Howard's End 88 (Barnes & Noble Classics ed., New York 1993) (1910).
[5] We find no merit in the remaining issue argued by the City and SCC.