IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

BLAIR NURSERIES, INC.,

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

Petitioner,

v.

CASE NO. 1D16-0423

BAKER COUNTY, FLORIDA, A
POLITICAL SUBDIVISION OF
THE STATE OF FLORIDA, AND
THE BOARD OF COUNTY
COMMISSIONERS OF BAKER
COUNTY, FLORIDA,

Respondents.

_____/

Opinion filed September 13, 2016.

Petition for Writ of Certiorari.

T.R. Hainline, Jr., Emily G. Pierce, and Cristine M. Russell of Rogers Towers, P.A., Jacksonville, for Petitioner.

Richard C. Komando of Kopelousos, Bradley & Garrison, P.A., Orange Park, for Respondents.

MAKAR, J.

Blair Nurseries owns rural acreage in Baker County, Florida, which it subdivided in 2002 into twenty-two five-acre residential lots known as Smoke Rise II, a planned community for horse owners. In 2003, Celeste Reynolds purchased a lot and

built a home, but no other lots have been sold, leaving her property adjoining native undeveloped lands for over a decade in the defunct equestrian community.

In 2014, Blair Nurseries filed an application with Baker County to vacate the subdivision plat (excepting Reynolds's lot) so its property could be returned to acreage for agricultural purposes. The Baker County planning staff and the County's Development Review Committee recommended approval of the application and the County's Director of Zoning and Planning stated that the application satisfied all requirements.

The applicable statute required Blair Nurseries to show three things: (1) that it owned the property "covered by the plat sought to be vacated;" (2) that "the vacation [of the plat] by the governing body of the county *will not affect the ownership* . . . of other persons owning other parts of the subdivision," and (3) that vacation "will not affect the . . . right of convenient access" of such persons. § 177.101(3), Fla. Stat. (2014) (emphasis added). No dispute exists that Blair Nurseries owns the platted property and that access to Reynolds's home would be unaffected by vacation of the plat because her home directly abuts and accesses Mud Lake Road, which forms the southern border of much of the platted property. Instead, the only question—one that arose later in the process—was whether vacating the plat would affect Reynolds's "ownership" of her property within the meaning of the emphasized statutory language above.

The Baker County Board of County Commissioners held a public hearing on the matter at which Reynolds spoke. She opposed reversion, believing it would reduce the value of her home. A discussion arose about whether a potential reduction in value of her home was a sufficient legal justification to deny the application. Legal counsel for Blair Nurseries pointed out that Reynolds's ownership of her property would be unaffected, but some commissioners posited that the potential for reduced value was akin to "affect[ing] the ownership" of the property. In the end, the Commission unanimously denied Blair Nurseries' application.

Blair Nurseries sought certiorari and mandamus relief in the circuit court, arguing that the County failed to observe the essential requirements of law in denying the application; because its application met all criteria in the statute and county code, no basis existed to deny it. In addition, the County's consideration of the "value" of Reynolds's property as a basis for denial was legal error because the statute only permits consideration of whether vacation of a plat will "affect the ownership" of others who own property in the subdivision. The trial court issued a written order denying relief, but did not reach the value/ownership issue. Instead, it concluded that it lacked the judicial power to do so because the County's decision was a discretionary one:

[B]ecause both the applicable statute [section 177.101(3)] and county code provision [section 8.06.01[1]] use the permissive 'may' and do not include any words requiring a board to reach a particular decision if certain criteria are met, Petitioner has not demonstrated entitlement to mandamus or certiorari relief, and the court need not reach the testimonial or valuation issues.

Because it viewed the Board as having essentially unreviewable discretion to grant or deny an application, it thereby foreclosed any judicial relief whatsoever.

On second-tier certiorari review in this Court, Blair Nurseries is correct that the trial court violated a clearly established principle of law that resulted in a miscarriage of justice by concluding that the word "may" in section 177.101(3), precludes any judicial review of the Board's decision. Nader v. Fla. Dep't of High. Saf. & Motor Veh., 87 So. 3d 712, 727 (Fla. 2012). The statute plainly does not grant unreviewable discretion; and clearly established law limits the discretion to deny a facially valid plat application.

To begin, the Board's decision is a discretionary one within the confines of the statutory criteria, but it is also one subject to judicial review. In contrast, the trial court believed that the term "may" was the Legislature's way of saying that the Commission had discretion to do whatever it wants without judicial oversight. But that overlooks the remainder of the statute as well as caselaw and opinions of Florida's Attorney

---

[1] Section 8.06.01 of the Clay County Development Code provides only that the County may require a survey or improvements for "equivalent access," but does not speak in terms of what discretion the Board may wield. As such, it is not relevant as to the issues raised in this proceeding.

General contradicting such a conclusion. First of all, the word "may" in section 177.101(3) is used primarily as a legislative grant of authority to a local governing body to be able to vacate plats under specified circumstances. The purpose of Part I of Chapter 177, Florida Statutes (entitled "Platting"), is to "to establish consistent minimum requirements, and *to create such additional powers in local governing bodies, as herein provided to regulate and control the platting of lands*. This part establishes minimum requirements and does not exclude additional provisions or regulations by local ordinance, laws, or regulations." § 177.011, Fla. Stat. (2014) (emphasis added).

As the italicized language makes clear, a central purpose of the "Platting" statutes is to grant "additional powers" to local government, which is precisely what section 177.101(3) does, stating: "The governing bodies of the counties of the state may adopt resolutions vacating plats in whole or in part of subdivisions in said counties, returning the property covered by such plats either in whole or in part into acreage." § 177.101(3), Fla. Stat. As the Attorney General has noted in construing this section, the "power of a county or municipality to vacate property dedicated to a public use *is controlled by statute*." Op. Att'y Gen. Fla. 2005-11 (2005) (emphasis added). A county is powerless to vacate a subdivision plat absent compliance with the statute, which requires an application from the landowner. See Op. Att'y Gen. Fla. 72-

5

169 (1972) ("[T]here is no authority whatsoever under §177.101 . . . for a board of county commissioners to vacate, upon its own motion, a subdivision plat.").

Far from conferring unreviewable discretion, section 177.101(3) is a narrow grant of authority by which local governing bodies must govern their actions. It is restricted to those circumstances where a person owning platted property shows that vacation of the plat "will not affect the ownership or right of convenient access of persons owning other parts of the subdivision." § 177.101(3), Fla. Stat. Local governing bodies do not have unbridled discretion to do what they want or believe is justified; instead, upon a showing of the statutory requirements (and, if applicable, local code-based requirements), the Commission has a legal responsibility to grant the vacation request unless they prove non-compliance with applicable law. As our supreme court has said: "To deny a plat application, a local government agency must show by competent substantial evidence that the application does not meet the published criteria." Broward Cnty. v. G.B.V. Int'l, Ltd., 787 So. 2d 838, 842 (Fla. 2001). In other words, the burden is upon the local governing body to demonstrate by competent, substantial evidence that an applicant is not entitled to the requested action; whatever discretion the local governing body has is limited and not unbounded.

Further, the conclusion that local governing bodies lack broad, unreviewable discretion in their processing of plat vacation applications is buttressed by the

statutory requirement that grants and denials of plats "must be uniformly administered." Id.; see also § 177.101, Fla. Stat. (establishing "consistent minimum requirements" as to platting). Discretion is constrained where official action must be uniformly administered pursuant to consistent standards.

Finally, the trial court's denial of judicial review is a miscarriage of justice, akin to a denial of due process, because it foreclosed *any* judicial review of the Commission's rejection of the plat vacation application. To be upheld, the denial of the application required that the Commission demonstrate by competent, substantial evidence that Blair Nurseries did not meet the statutory requirements, an inquiry that the trial court did not undertake (i.e., "the court need not reach the testimonial or valuation issues"). It is hard to imagine anything more manifestly unjust than a complete denial of judicial review when it should otherwise have been provided as a matter of right. G.B.V., 787 So. 2d at 843 ("[F]irst-tier certiorari review is not discretionary but rather is a matter of right and is akin in many respects to a plenary appeal . . . ."). For these reasons, and because our role "is to halt the miscarriage of justice, nothing more," id., we quash the circuit court's decision.

ROWE, J., CONCURS; BILBREY, J. DISSENTS WITH OPINION.

BILBREY, J., dissenting.

I respectfully dissent. The trial court did not err in its denial of first-tier certiorari relief, and even if it had, such an error did not constitute a miscarriage of justice warranting second-tier certiorari relief.

The controlling procedure was set forth over thirty years ago in <u>City of Deerfield Beach v. Valliant</u>, 419 So. 2d 624, 626 (Fla. 1982), as follows:

> where full review of administrative action is given in the circuit court as a matter of right, one appealing the circuit court's judgment is not entitled to a second full review in the district court. Where a party is entitled as a matter of right to seek review in the circuit court from administrative action, the circuit court must determine whether procedural due process is accorded, whether the essential requirements of the law have been observed, and whether the administrative findings and judgment are supported by competent substantial evidence. The district court, upon review of the circuit court's judgment, then determines whether the circuit court afforded procedural due process and applied the correct law.[2]

In <u>Valliant</u>, the Florida Supreme Court essentially equated the certiorari review afforded by a circuit court with the appellate review exercised by a district court. <u>Id.</u> Implicit in such an equation is the notion that second-tier certiorari review should be sparingly granted. As the Supreme Court has explained:

> a balance must be struck between respecting the finality of appellate review provided by the circuit court's appellate

---

2 The phrase applying the correct law is synonymous with observing the essential requirements of law. <u>Haines City Cmty. Dev. v. Heggs</u>, 658 So. 2d 523, 530 (Fla. 1995).

8

counties, returning the property covered by such plats either in whole or in part into acreage. **Before** such resolution of vacating any plat either in whole or in part shall be entered by the governing body of a county, it must be shown that the persons making application for said vacation own the fee simple title to the whole or that part of the tract covere decision [on first-tier certiorari review] and the necessity of having the availability of certiorari to use in a narrow group of cases, which "merit the extra review and safeguard provided by certiorari."

Nader v. Fla. Dep't of Highway Safety & Motor Vehicles, 87 So. 3d 712, 727 (Fla. 2012) (quoting Haines City Cmty. Dev. v. Heggs, 658 So. 2d 523, 531 (Fla. 1995)).

Since Valliant, the Florida Supreme Court repeatedly has made it clear that second-tier certiorari relief is a remedy appropriate only in very narrow circumstances. Such a narrow circumstance does not include disagreement with a circuit court's evaluation of evidence. Educ. Dev. Ctr., Inc. v. City of W. Palm Beach Zoning Bd. of Appeals, 541 So. 2d 106 (Fla. 1989). Further, second-tier certiorari jurisdiction cannot be invoked "where the decision below [on first-tier certiorari review] recognizes the correct general law and applies the correct law to a new set of facts to which it has not been previously applied. In such a situation, the law at issue is not a clearly established principle of law." Nader, 87 So. 3d at 723 (citing Ivey v. Allstate Ins. Co., 774 So. 2d 679, 682-83 (Fla. 2000)).

Here, the circuit court certainly applied the correct law when it considered chapter 177, Florida Statutes, and section 8.06.01 of the Baker County Land Development Regulations. Construing these provisions, the circuit court concluded in

9

pertinent part that "because both the applicable statute and county code provision use the permissive 'may' and do not include any words requiring a board to reach a particular decision if certain criteria are met, [Blair Nurseries] has not demonstrated entitlement to mandamus or certiorari relief." Section 177.101(3) provides:

> (3) The governing bodies of the counties of the state may adopt resolutions vacating plats in whole or in part of subdivisions in said d by the plat sought to be vacated, and it must be further shown that the vacation by the governing body of the county will not affect the ownership or right of convenient access of persons owning other parts of the subdivision.

(Emphasis added).

The majority reads this provision as setting forth the complete requirements for vacating a plat map. Thus, if two requirements are met – (i) demonstration of fee simple title and (ii) demonstration that ownership or right of access by other owners will not be affected – then, a county must vacate the plat. I read section 177.101(3) as instead only imposing minimal requirements before a request to vacate a plat can even be considered. Indeed, that is exactly what section 177.011, quoted by the majority, states: "[Part I of Chapter 177] establishes **minimum requirements** and does not exclude additional provisions or regulations by local ordinance, laws, or regulations." (Emphasis added). In other words, the elements of standing to seek a change in a plat map are stated in section 177.101(3); entitlement to such a change is a succeeding inquiry. That the minimum standards should be uniform is a fact which hardly dispossesses a local authority from exercising certain discretion over land-use

10

planning.

There is ample case law holding that the use of the term "may" ordinarily denotes discretionary or permissive authority. See, e.g., The Fla. Bar v. Trazenfeld, 833 So. 2d 734, 738 (Fla. 2002) ("The word 'may' when given its ordinary meaning denotes a permissive term rather than the mandatory connotation of the word 'shall.'"); Sanders v. City of Orlando, 997 So. 2d 1089 (Fla. 2008). The majority does not offer a compelling reason for not construing the term "may" in its ordinary sense, and it is imminently reasonable that a local authority be given a measure of discretion over land use.

Assuming for the sake of argument that the circuit court did err in construction of chapter 177, it still does not follow that second-tier certiorari relief is warranted. As indicated, legal error, in and of itself, is not a basis for granting certiorari review. Citizens Prop. Ins. Corp. v. San Perdido Ass'n, 104 So. 3d 344, 351 (Fla. 2012). Indeed, the Florida Supreme Court has repeatedly emphasized that it is the "seriousness of the error" and not the mere existence of error which is the determinative factor. See Ivey, 774 So. 2d at 682 (quoting Combs v. State, 436 So. 2d 93, 95 (Fla. 1983)). Moreover, it is the seriousness of error allegedly committed *by the court on first-tier certiorari* which is the object of focus for a district court considering second-tier certiorari review — not any error which may have been made by the local authority (or county court) in the first instance, Valliant, nor even the erroneous

11

application of the correct law to the facts of the case, <u>Ivey</u>. Here, the trial court applied the correct law, chapter 177, to the facts of the case. That the majority would have reached a different result had it conducted first-tier certiorari review is of no moment. See <u>Futch v. Fla. Dep't of Highway Safety & Motor Vehicles</u>, 189 So. 3d 131 (Fla. 2016); <u>Educ. Dev. Ctr., Inc.</u>; <u>Ivey</u>.

Importantly, I submit that it is not correct to say, as the majority does, that the circuit court denied judicial review. It considered the applicable law and found that the County acted within the authority permitted to it by this law. Statutory construction does constitute judicial review, even if it results in an affirmance of the action taken below. <u>See, for example</u>, <u>Mendenhall v. State</u>, 48 So. 3d 740 (Fla. 2010). The majority simply disagrees with the result reached by the County and then by the circuit court. As Blair Nurseries cannot point to a denial of procedural due process and as the circuit court considered the arguments raised in the certiorari petition and rejected those arguments upon an application of the controlling law to the facts of the case, there can be no reasonable assertion that a manifest injustice occurred. See <u>Custer Med. Ctr. v. United Auto. Ins. Co.</u>, 62 So. 3d 1086, 1092 (Fla. 2010) ("when a district court considers a petition for second-tier certiorari review, the 'inquiry is limited to whether the circuit court afforded procedural due process and whether the circuit court applied the correct law,' or, as otherwise stated, departed from the essential requirements of law"); <u>Heggs</u>.

12

By granting second-tier certiorari, this court is granting a *second* appeal. Such is an improper use of certiorari. Ivey, 774 So. 2d at 683. As the Florida Supreme Court has explained, improper expansion of certiorari jurisdiction would "afford a litigant two appeals from a court of limited jurisdiction, while limiting a litigant to only one appeal in cases originating in a trial court of general jurisdiction." Nader, 87 So. 3d at 723 (quoting Custer, 62 So. 3d at 1093).

Under the relaxed standard employed by the majority, certiorari is available to any party who could prevail if a direct appeal were available, contrary to well-established precedent which holds that "appellate courts must exercise caution not to expand certiorari jurisdiction to review the correctness of the circuit court's decision." Nader, 87 So. 3d at 723. Such a relaxed standard improperly "invite[s] certiorari review of a large number of the appellate decisions issued by circuit courts." Ivey, 774 So. 2d at 683 (quoting Stilson v. Allstate Ins. Co., 692 So. 2d 979, 982-83 (Fla. 2d DCA 1997)). Second-tier certiorari review is an "extraordinary power," Stilson, 692 So. 2d at 982, and as such, it should be invoked sparingly and cautiously.

In sum, I would deny the petition.