# Third District Court of Appeal

## State of Florida

Opinion filed November 29, 2017.
This Opinion is not final until disposition of any further motion
for rehearing and/or motion for rehearing en banc.
Any previously-filed motion for rehearing en banc is deemed moot.

_____

No. 3D16-38
Lower Tribunal No. 13-461

_____

## Allstate Fire and Casualty Insurance Company,
Petitioner,

vs.

## Hallandale Open MRI, LLC, a/a/o Alexia Blake,
Respondent.

On Petition for Writ of Certiorari from the Circuit Court for Miami-Dade County, Appellate Division, Jacqueline Hogan Scola, Jorge Cueto, and Ariana Fajardo Orshan, Judges.

Shutts & Bowen, and Suzanne Youmans Labrit and Douglas G. Brehm (Tampa); Cozen O'Connor, and Peter J. Valeta (Chicago, IL), for petitioner.

Marlene S. Reiss, for respondent.

Before SALTER, LOGUE and SCALES, JJ.

SALTER, J.

On Motions for Rehearing and for Certification

On consideration of the respondent's motion for rehearing and motion to certify questions of great public importance, and the response, we withdraw our opinion in this case issued April 19, 2017,[1] and replace it with the opinion which follows.

I.     The Underlying Legal Issue and Final County Court Judgment

This case involves a dispute between Allstate Fire and Casualty Insurance Company ("Allstate") and a medical provider (Hallandale Open MRI, or "Hallandale") regarding a single legal issue: whether a personal injury protection ("PIP") automobile insurance policy issued by Allstate contains language sufficiently specific to limit provider reimbursements to 80% of the maximum charges described in section 627.736(5)(a)2.f., Florida Statutes (2013). The issue arose in the Miami-Dade County Court, based on stipulated facts pertaining to the policy and the medical services provided by Hallandale. In October 2013—a time when this Court had not ruled on the specific legal issue presented to the County Court—the County Court issued a directed verdict for Hallandale (determining that

---

[1] Allstate Fire & Cas. Ins. Co. v. Hallandale Open MRI, LLC, 42 Fla. L. Weekly D893 (Fla. 3d DCA Apr. 19, 2017).

2

the Allstate policy language was insufficiently specific to invoke the statutory limitations on payment) and entered final judgment for Hallandale in the amount of $407.26, plus prejudgment interest.

II.     Allstate's Appeal to the Circuit Court Appellate Division

Allstate appealed to the appellate division of the Miami-Dade Circuit Court. Allstate did not seek a stay pending review, and Hallandale did not seek execution or other enforcement of the County Court judgment. In December 2015, the three-judge Circuit Court appellate division panel affirmed the final judgment against Allstate. The five-page opinion affirming the County Court judgment surveyed pertinent case law from the Florida Supreme Court and several of Florida's District Courts of Appeal.

In Geico General Insurance Co. v. Virtual Imaging Services, Inc., 141 So. 3d 147, 159 (Fla. 2013), the Florida Supreme Court held that PIP insurers were required to notify insureds by specifically electing the limitations in the Medicare fee schedules in order to apply them to medical reimbursement claims. The appellate division then observed that the First and Fourth District Courts of Appeal had issued conflicting decisions regarding the sufficiency of such notice, in Allstate Fire & Casualty Insurance v. Stand-Up MRI of Tallahassee, P.A., 188 So. 3d 1 (Fla. 1st DCA 2015) (policy provided legally sufficient notice), and Orthopedic Specialists

3

v. Allstate Insurance Co., 177 So. 3d 19 (Fla. 4th DCA 2015) (identical policy language not legally sufficient). The appellate division also noted that this Court had not issued a controlling decision on the issue.

After surveying the reported decisions, the Circuit Court appellate division found the policy language insufficient to support the statutory limitation computed using the Medicare fee schedules and, as already noted, affirmed the County Court final judgment in favor of Hallandale. In early 2016, Allstate filed a petition seeking second-tier certiorari from the appellate division decision. Allstate's petition cited four Miami-Dade Circuit Court appellate division opinions that directly conflicted with the appellate division decision (and on the specific, controlling legal issue within the decision) involved in the present case.[2]

Hallandale opposed the second-tier petition on jurisdictional and substantive grounds. Allstate did not seek a stay of enforcement of the County Court's

---

[2] Allstate Prop. & Cas. Ins. Co. v. Royal Diagnostic Ctr., Inc. a/a/o Mondy, 21 Fla. L. Weekly Supp. 627a (Fla. 11th Cir. Ct. April 3, 2014); Allstate Fire & Cas. Ins. Co. v. Hallandale Open MRI LLC a/a/o Politesse, 21 Fla. L. Weekly Supp. 989a (Fla. 11th Cir. Ct. June 23, 2014); Allstate Prop. & Cas. Co. v. Royal Diagnostic Ctr., Inc. a/a/o Leon, 22 Fla. L. Weekly Supp. 787a (Fla. 11th Cir. Ct. January 29, 2015); and Allstate Indem. Co. v. Gables Ins. Recov., Inc. a/a/o Jimenez, 22 Fla. L. Weekly Supp. 1146a (Fla. 11th Cir. Ct. June 8, 2015).

4

judgment, nor did Hallandale seek to enforce the judgment, while the petition was pending.

III.    <u>Florida Supreme Court Accepts Review of the Conflict Cases from the First and Fourth Districts</u>

On January 20, 2016, the Florida Supreme Court accepted jurisdiction to review the two 2015 District Court of Appeal conflict cases from the First and Fourth Districts, <u>Stand-Up MRI</u> and <u>Orthopedic Specialists</u>, cited above. <u>Allstate Ins. Co. v. Orthopedic Specialists</u>, No. SC15-2298 (Fla. Jan. 20, 2016) (accepting jurisdiction). A decision resolving the conflict issue was issued in January 2017 (discussed further below). <u>Allstate Ins. Co. v. Orthopedic Specialists</u>, 212 So. 3d 973 (Fla. 2017).

IV.    <u>An Intervening Decision by This Court on the Conflict Issue</u>

While the petition for second-tier certiorari was pending in this Court and the conflict case was pending in the Florida Supreme Court, a panel of this Court issued a decision on the same issue, as certified by the Miami-Dade County Court for direct review under Florida Rule of Appellate Procedure 9.030(b)(4)(A) (discretionary review of an order certified by the county court to be of great public importance). <u>Fla. Wellness & Rehab. v. Allstate Fire & Cas. Ins. Co.</u>, 201 So. 3d 169 (Fla. 3d DCA 2016) (holding that the Allstate policy language was clear and unambiguous,

5

as determined by the First District in Stand-Up MRI). That decision, issued in July 2016, also certified conflict with the Fourth District opinion in Orthopedic Specialists.

IV.    This Court's Dismissal of Allstate's Petition

Two months after this Court's opinion deciding the conflict issue, but while the conflict was still pending before the Florida Supreme Court, we dismissed Allstate's petition for lack of jurisdiction. Judge Logue dissented in an opinion which stressed the importance of exercising jurisdiction when the County Court and Circuit Court appellate division decisions on an issue are conflicting, and particularly when the District Court for that district has issued an opinion resolving the conflict. Allstate Fire & Cas. Ins. Co. v. Hallandale Open MRI, LLC, 208 So. 3d 741 (Fla. 3d DCA 2016). Applying Florida Supreme Court case law limiting our exercise of second-tier certiorari jurisdiction, particularly Custer Medical Center v. United Automobile Insurance Co., 62 So. 3d 1086 (Fla. 2010), and Allstate Insurance Co. v. Kaklamanos, 843 So. 2d 885 (Fla. 2003), we concluded that the Circuit Court appellate division panel had not violated any clearly established principle of law resulting in a miscarriage of justice. Custer, 62 So. 3d at 1092.

Although this Court had by then decided the conflict issue in favor of Allstate's position, the Florida Supreme Court had not yet ruled on the conflict at

6

that time, and we observed that the Circuit Court appellate division did not have our decision before it when it ruled at the end of 2015.

V.      <u>Allstate's Motion for Rehearing; the Supreme Court's Opinion</u>

In November 2016, Allstate moved for rehearing and rehearing en banc regarding our dismissal opinion, contending that we had jurisdiction to consider the petition for second-tier certiorari and that our own decision on the merits of the conflict issue required us to quash the Circuit Court appellate division's decision. While those motions were being briefed and considered, the Florida Supreme Court issued its decision on the conflict issue, <u>Allstate Insurance Co. v. Orthopedic Specialists</u>, 212 So. 3d 973 (Fla. 2017). That decision concluded that Allstate's policy language on reimbursement limitations under the PIP statute was legally sufficient and not ambiguous, a decision consistent with this Court's panel decision in <u>Florida Wellness</u> a few months earlier, and contrary to the Circuit Court appellate division opinion under consideration in the present case.

Had the Florida Supreme Court's opinion on the conflict issue or this Court's opinion on that issue been available to the Circuit Court appellate division as it considered the question in late 2015, the appellate division panel would have been duty bound to follow either of those decisions. Given the continued, apparent

willingness of Allstate and Hallandale[3] to continue the proceedings in the present case, however, we initially concluded that the Florida Supreme Court's resolution of the conflict issue in January 2017 compelled a new analysis and different result.

Allstate's motion for rehearing, supplemented by the Supreme Court opinion in its favor, persuaded a majority of this panel that we should take jurisdiction of the petition for second-tier certiorari, apply that decision to the same issue presented in the petition, and quash the December 2015 Circuit Court appellate division decision in favor of Hallandale. We granted Allstate's motion for rehearing, exercised jurisdiction, and applied Orthopedic Specialists as proposed by Allstate. Allstate Fire & Cas. Ins. Co. v. Hallandale Open MRI, LLC, 42 Fla. L. Weekly D893 (Fla. 3d DCA Apr. 19, 2017).[4]

In a vigorous dissent, Judge Scales focused on the retroactive effect of such a result and the absence of error in the appellate division's decision at the time it considered the case and issued its opinion:

---

[3] Hallandale took no action to collect the judgment, or to compel Allstate to post a supersedeas bond, throughout this process.

[4] In a concurring opinion, Judge Logue maintained his position that this Court had jurisdiction to resolve the conflict in reported decisions of the Miami-Dade Circuit Court appellate division from the outset, and that the initial dismissal of the petition for second-tier certiorari was incorrect.

Employing a de novo standard of review, the circuit court's appellate division relied upon the appropriate precedent to affirm the trial court's construction of Allstate's insurance policy. The appellate court's only "error" was failing to accurately predict which of two persuasive, yet competing, precedents the Florida Supreme Court ultimately would adopt.

Id. at D897 (Scales, J., dissenting).

VI.    Hallandale's Motion for Rehearing and Certification

Hallandale then moved for rehearing, rehearing en banc, and certification of two questions of great public importance[5] to the Florida Supreme Court:

DOES A DISTRICT COURT'S SECOND-TIER CERTIORARI JURISDICTION EXTEND TO REVIEW A CIRCUIT APPELLATE COURT'S DECISION THAT DOES NOT CONSTITUTE A DEPARTURE FROM THE ESSENTIAL REQUIREMENTS OF LAW, BUT RATHER CHOSE BETWEEN TWO NON-BINDING DISTRICT COURT DECISIONS IN THE ABSENCE OF A BINDING DECISION FROM THE DISTRICT IN WHICH THE CIRCUIT COURT SITS?

CAN A FLORIDA SUPREME COURT DECISION BE APPLIED RETROACTIVELY TO A CIRCUIT COURT APPELLATE DECISION THAT BECAME FINAL, AND WHICH DOES NOT DEPART FROM THE ESSENTIAL REQUIREMENTS OF LAW, PRIOR TO THE FLORIDA SUPREME COURT'S ISSUANCE OF ITS DECISION?

In these motions, Hallandale emphasized that the present case is not a "pipeline" case or one in which the county court judgment is anything other than a

---

[5]  Fla. R. App. P. 9.030(a)(2)(A)(v).

9

final judgment. "In short, as the dissent eloquently recognizes, retroactive application of the Florida Supreme Court's decision to a case that already has reached its appellate finality is simply not supported by the law." Respondent Hallandale's Mot. For Reh'g, etc., 5 (May 4, 2017). Upon consideration of the motions and Allstate's response, a majority of the panel has concluded that Hallandale's arguments are well taken.

VII. Conclusion

For these reasons, on rehearing we dismiss Allstate's petition for certiorari taken from the decision of the Circuit Court appellate division for lack of jurisdiction.[6] Our colleague's dissenting opinion makes the important argument that second-tier certiorari jurisdiction should extend to pending intra-district appellate division conflict cases for the same reason that the district courts may hear appeals en banc, and for the same reason that the Florida Supreme Court exercises jurisdiction to resolve conflicting decisions among the district courts.

On the motion for certification of questions of great public importance, we certify a single, rephrased question as follows:

> DOES A DISTRICT COURT OF APPEAL HAVE JURISDICTION
> TO GRANT A PETITION FOR SECOND-TIER CERTIORARI IN A
> CASE IN WHICH THERE IS DIRECT CONFLICT ON A

---

[6] Under this Court's Internal Operating Procedures, the issuance of this opinion on rehearing is deemed a denial as moot of Hallandale's motion for rehearing en banc.

10

DETERMINATIVE ISSUE AS BETWEEN (A) THE CIRCUIT COURT APPELLATE DIVISION CASE WHICH IS THE SUBJECT OF THE SECOND-TIER PETITION, AND (B) A DECISION BY A DIFFERENT CIRCUIT COURT APPELLATE DIVISION PANEL WITHIN THE SAME DISTRICT, WHEN EACH OF THE CONFLICTING DECISIONS WAS RENDERED IN THE ABSENCE OF A CONTROLLING DECISION BY THE DISTRICT COURT FOR THAT DISTRICT?

Motion for rehearing granted; petition dismissed; question certified to the Florida Supreme Court as a question of great public importance.

SCALES, J., concurs.

11

Allstate Fire & Casualty Insurance Company vs. Hallandale Open MRI, LLC
Case No. 3D16-38

LOGUE, J., concurring in part and dissenting in part.

I fully concur that the question presented by the facts of this case be certified to the Florida Supreme Court as one of great public importance.

As this case illustrates, circuit court judges sitting in an appellate capacity will often issue rulings that conflict with the appellate rulings of other circuit court judges in the same circuit. Thus, as happened here, a person filing in county court and appealing to the circuit court obtains a result completely at odds with the result obtained by a different person filing in the exact same county court and appealing to the exact same circuit court.[7] Because there are no further appeals as of right, a litigant wins or loses based upon the predilections of the individual judges who heard the trial and appeal and not upon a coherent body of law that applies to all litigants. Here, this failure in the system is particularly unfortunate because the decision under review is contrary to a recent decision of the Florida Supreme Court.[8] The question

_____

[7] Allstate Fire & Cas. Ins. Co. v. Hallandale Open MRI LLC, a/a/o Blake, 23 Fla. L. Weekly Supp. 683, 684 (Fla. 11th Cir. Ct. Dec. 7, 2015) (listing conflicting cases and noting "[w]e respectfully disagree with our colleagues").

[8] The decision conflicts with the subsequently decided case of Allstate Insurance Co. v. Orthopedic Specialists, 212 So. 3d 973, 974 (Fla. 2017).

12

certified by the majority properly provides the Florida Supreme Court a platform to decide whether and how to address this problem.

Where I respectfully disagree with my brothers in the majority is that I believe an incorrect circuit court appellate decision in these circumstances – an incorrect legal decision that treats litigants differently than the same circuit court treated other similarly situated litigants – constitutes a departure from the most essential requirement of law: equality before the law. It results in exactly the type of miscarriage of justice without other remedy which certiorari exists to correct.

In reaching a contrary result, the majority's analysis is both logical and principled. But I give greater weight to the defining characteristic of common law certiorari whereby "the district courts must be allowed a large degree of discretion" to identify "legal errors serious enough to constitute a departure from the essential requirements of law." Nader v. Fla. Dep't of Highway Safety & Motor Vehicles, 87 So. 3d 712, 722 (Fla. 2012) (quoting Haines City Cmty. Dev. v. Heggs, 658 So. 2d 523, 528 (Fla. 1995)). "It is this discretion which is the essential distinction between review by appeal and review by common-law certiorari." Id. at 722 (quoting Combs v. State, 436 So. 2d 93, 95-96 (Fla. 1983)).

I also believe the majority errs by looking solely from the perspective of the circuit court judges who made the incorrect appellate decision under review to

13

decide whether the incorrect decision departs from the essential requirements of law. Nader teaches that district courts of appeal must lift their vision when applying certiorari and also consider the need to facilitate Supreme Court review to ensure a clear body of binding precedent that treats all litigants properly and equally. Nader, 87 So. 3d at 724-25 (approving the district court's finding of a departure from the essential requirements of law based in part on the "dramatic ramifications" of refusing further review by way of certiorari).

My position can be summarized as follows: (1) a defect in our court system currently prevents the establishment of clearly established principles of law governing a wide array of county court issues; (2) Florida courts historically issued writs of certiorari to review conflicts among lower appellate decisions; (3) issuing a writ of certiorari to resolve a conflict among circuit court decisions is not a second appeal because the review focuses on clarifying the law and not the outcome for the litigants; and (4) the current standard for second-tier certiorari permits review to resolve conflicts in lower appellate decisions.

**ANALYSIS**

(1) <u>A defect in our court system prevents the establishment of clearly established principles of law governing a wide array of county court issues.</u>

A properly functioning system of appellate courts will necessarily produce conflicting decisions. And a properly functioning system of appellate courts will

14

necessarily have a method to resolve those conflicts. For example, the Florida Supreme Court resolves conflicts that arise among the district courts of appeal. Art. V, § 3(b)(3), Fla. Const. Of course, the district courts are not the only appellate courts in Florida. The circuit courts serve as appellate courts when reviewing orders of the county courts and local governments. Art. V, § 5(b), Fla. Const.; § 26.012(1), Fla. Stat. (2016). Just as the Florida Supreme Court resolves conflicts among the district courts of appeal, the district courts should similarly resolve conflicts among the circuit courts acting in their appellate capacity. But this is not happening.

It is a well-known, but little-discussed defect in our court system that litigants in the county courts often have their cases decided based upon conflicting circuit court appellate decisions. As occurred in the case below, litigants in the exact same circumstances filing in the exact same county court receive different outcomes based on conflicting case law. The instant case is only a recent example.

Twenty years ago, this defect was identified by the Second District in an opinion written by Judge Altenbernd. As a result of this "significant problem within our existing judicial structure," Judge Altenbernd wrote, referring to the confused and conflicting precedents governing county courts, "there may never be 'clearly established principles of law' governing a wide array of county court issues, including PIP issues." Stilson v. Allstate Ins. Co., 692 So. 2d 979, 982 (Fla. 2d DCA

15

1997). The Supreme Court of Florida agreed and adopted Judge Altenbernd's language in full in <u>Ivey v. Allstate Ins. Co.</u>, 774 So. 2d 679, 683 (Fla. 2000) (quoting <u>Stilson</u>, 692 So. 2d at 982).

The idea that "there may never be 'clearly established principles of law' governing a wide array of county court issues" contradicts an essential limitation to judicial discretion—that "[d]ifferent results reached from substantially the same facts comport with neither logic nor reasonableness." <u>Canakaris v. Canakaris</u>, 382 So. 2d 1197, 1203 (Fla. 1980). Accepting this idea would constitute a fundamental breakdown in the hierarchal system of our appellate courts, which is designed precisely to prevent different results reached from substantially the same facts. <u>Id.</u>

    (2) <u>Florida Courts historically issued writs of certiorari to review conflicts in lower appellate decisions.</u>

Not only does the United States Supreme Court routinely issue writs of certiorari to review conflict, but the Florida Supreme Court also historically issued writs of certiorari to review conflict.

In <u>Lake v. Lake</u>, 103 So. 2d 639, 643 (Fla. 1958), for example, the Florida Supreme Court expressly acknowledged that it could issue a writ of certiorari under article V, section 4(2), of the Florida Constitution (1957) to resolve a conflict on the face of a district court opinion:

16

> If in a particular case an opinion is rendered by a district court of appeal that prima facie conflicts with a decision of another district court of appeal or of the Supreme Court on the same point of law, the writ of certiorari may issue and, after study, may be discharged, or the decision of the district court of appeal may be quashed or modified to the end that any conflict may be reconciled.

Lake, 103 So. 2d at 643 (emphasis added). See also Foley v. Weaver Drugs, Inc., 177 So. 2d 221, 225 (Fla. 1965) (holding that the Florida Supreme Court "may review by conflict certiorari a per curiam judgment of affirmance without opinion where an examination of the record proper discloses that the legal effect of such per curiam affirmance is to create conflict with a decision of this court or another district court of appeal"); Gibson v. Maloney, 231 So. 2d 823, 824 (Fla. 1970) ("It is conflict of Decisions, not conflict of Opinions or reasons that supplies jurisdiction for review by certiorari."). While these decisions were abrogated by the subsequent amendments to the constitution which removed all certiorari jurisdiction from the Florida Supreme Court,[9] they illustrate how conflict certiorari has been part of our constitutional history.[10]

---

[9] The holdings of these cases were abrogated by the 1980 Amendments to article V, section 3(b)(3), of the Florida Constitution. See, e.g., Jenkins v. State, 385 So. 2d 1356, 1359 (Fla. 1980).

[10] Some may argue that these cases involved "constitutional certiorari" under constitutional provisions that expressly authorized the Supreme Court to review conflict by certiorari. Art. V, §4(2), Fla. Const. (1957) ("The Supreme Court may review by certiorari any decision of a district court of appeal . . . that is in direct

17

It should come as no surprise that certiorari is flexible enough to review conflicts. In the appropriate context, certiorari is flexible enough to provide a full-blown appeal of right. In De Groot v. Sheffield, 95 So. 2d 912, 915 (Fla. 1957), the Supreme Court concluded that a party to an administrative proceeding was entitled to an appeal as a matter of right because the proceeding was quasi-judicial in nature. No statute provided the means for appeal, however, so the Florida Supreme Court held that the proper vehicle to provide the missing plenary appeal was the circuit court's discretion to issue a common law writ of certiorari. Id. at 915-16 ("The writ is available to obtain review in such situations when no other method of appeal is available.").

---

conflict with a decision of another district court of appeal or of the Supreme Court on the same point of law."). This "constitutional certiorari," it may be argued, provides an expanded form of certiorari including a broader type of review than that provided by the "common law certiorari" that the current constitution provides to district courts of appeal.

This argument conflicts with other case law. While there may be differences between "constitutional certiorari" and "common law certiorari," the language in the constitution as of 1957 providing for the issuance of certiorari based on conflict is a type of certiorari that is more restrictive – not more expansive – than common law certiorari. The drafters granted the Florida Supreme Court the discretion to issue the writ – not in general – but only in certain limited circumstances including conflict. This is the only explanation that reconciles the Lake line of cases with the Supreme Court's contemporaneous decision in De Groot v. Sheffield, 95 So. 2d 912, 915 (Fla. 1957) discussed later in this opinion.

In subsequent decisions, the Florida Supreme Court made clear that this use of common law certiorari was not subject to the restrictive standard often associated with common law certiorari in other contexts: "[a]lthough termed 'certiorari' review, review at this level is not discretionary but rather is a matter of right and is akin in many respects to a plenary appeal." Fla. Power & Light Co. v. City of Dania, 761 So. 2d 1089, 1092 (Fla. 2000). The Florida Supreme Court subsequently codified the De Groot line of cases in Rule 9.100(c)(2) of the Florida Rules of Appellate Procedure where it remains today. Indeed, common law certiorari has provided a plenary appeal as of right in other circumstances as well.[11]

Just as common law certiorari can be used to provide a required but missing plenary appeal as explained in De Groot, it can be used to provide a less-than-plenary review based on an express conflict when necessary to avoid the current situation in which "there may never be 'clearly established principles of law' governing a wide array of county court issues."

---

[11] For example, certiorari as an appeal of right is available to obtain first-tier appellate review of a circuit court appellate decision to award attorney's fees or disqualify counsel. See, e.g., City of Miami Beach v. Deutzman, 180 So. 3d 245, 245-46 (Fla. 3d DCA 2015) ("The order was the first ruling on the question of attorneys' fees. Properly viewed, our proceeding is not the second, but rather the first tier of appellate review.").

(3) Issuing a writ of certiorari to resolve a conflict in circuit court appellate decisions is not a second appeal because the review focuses on clarifying the law and not the outcome for the litigants.

The main objection to granting certiorari to review a conflict is that it may allow a "second appeal." See Custer Med. Ctr. v. United Auto. Ins. Co., 62 So. 3d 1086, 1092-93 (Fla. 2010). But as the Florida Supreme Court explained in Lake, the grant of certiorari to resolve a conflict is not a second appeal because the focus is no longer on resolving the dispute between the parties but instead on resolving the conflict in the law.

In Lake, the Supreme Court emphasized the importance of not granting a second appeal, which is both wasteful and abusive: "[w]hen a party wins in the trial court he must be prepared to face his opponent in the appellate court, but if he succeeds there, he should not be compelled the second time to undergo the expense and delay of another review." Lake, 103 So. 2d at 642. A party, the Court concluded, "is not entitled to two appeals." Id. But the Court in Lake further explained that issuing a writ of certiorari to resolve a conflict is not a second appeal because such review "deal[s] with matters of concern beyond the interests of the immediate litigants." Id. When granting certiorari to resolve a conflict between appellate decisions, "at this late day in the progress of the litigation the standardization of

decisions on the same point of law will have become primary, the effect upon the immediate litigants consequential." Id. at 643.

Perhaps the most-cited reason why second-tier certiorari cannot be allowed to become a second appeal is that doing so would afford a litigant in the county court (which is a trial court of limited jurisdiction) more appeals than a litigant in the circuit court (which is a trial court of general jurisdiction).[12] But issuing the writ to resolve conflict does not give a county court litigant more appellate opportunities than the circuit court litigant because the circuit court litigant has the right to seek further review if the district court's review of its case leads to an opinion that conflicts with the decision of another district.

The issuance of a writ of certiorari by a district court to resolve conflicts in circuit court appellate decisions is no more the granting of a second appeal than the Supreme Court's exercise of conflict jurisdiction to resolve conflicts among district

---

[12] "The policy behind this rule is simple. . . . If, in cases originating in courts inferior to the circuit courts, another appeal from the circuit court is afforded in the guise of certiorari, then a litigant will have two appeals from the court of limited jurisdiction, while a litigant would be limited to only one appeal in cases originating in the trial court of general jurisdiction." Heggs, 658 So. 2d at 526 n.4; see, e.g., Custer, 62 So. 3d at 1093 ("A more expansive review would also afford a litigant two appeals from a court of limited jurisdiction, while limiting a litigant to only one appeal in cases originating in a trial court of general jurisdiction.").

21

court decisions. Far from being a usurpation of the district court's jurisdiction and prerogative as a final appellate court, conflict certiorari is a proper and necessary adjunct to it. Thus, granting a petition for writ of certiorari to resolve conflicts does not equate to granting a second appeal.

(4) The current standard for second-tier certiorari allows review to resolve conflicts in lower appellate decisions.

Finally, I believe the current standard for second-tier certiorari includes discretionary review to quash incorrect decisions that conflict with other circuit court appellate opinions in the same circuit and district. The standard for second-tier certiorari is whether the circuit court's decision denies procedural due process or departs from the essential requirements of law resulting in a miscarriage of justice. Custer, 62 So. 3d at 1092. While a court considering issuing the writ must "not usurp the authority of the trial judge or the role of any other appellate remedy, [it must] preserve the function of this great writ of review as a 'backstop' to correct grievous errors that, for a variety of reasons, are not otherwise effectively subject to review." Custer, 62 So. 3d at 1092 (quoting Heggs, 658 So. 2d at 531 n.14). "Thus, the district court's exercise of its discretionary certiorari jurisdiction should 'depend on the court's assessment of the gravity of the error and the adequacy of other relief.'" Custer, 62 So. 3d at 1092 (quoting Heggs, 658 So. 2d at 531 n.14).

The analysis concerning the gravity of the error cannot be reduced to a mechanical formula. The Supreme Court has explained that it is impossible to create an exhaustive list of the sort of egregious errors encompassed by second tier certiorari. Instead, "the district courts must be allowed a large degree of discretion" to identify "legal errors serious enough to constitute a departure from the essential requirements of law." Nader, 87 So. 3d at 722 (quoting Heggs, 658 So. 2d at 528). This "discretion and flexibility" is necessary because "a reviewing court is drawing new lines and setting judicial policy as it individually determines those errors sufficiently egregious or fundamental to merit the extra review and safeguard provided by certiorari." Id. at 723. "It is this discretion which is the essential distinction between review by appeal and review by common-law certiorari." Id. at 722 (quoting Combs v. State, 436 So. 2d 93, 95-96 (Fla. 1983)).

Applying this discretion to identify errors sufficiently egregious to constitute a departure from the essential requirements of law, it is hard to imagine a more grievous error than to allow identical cases in the same county court to be decided differently based upon conflicting appellate decisions and to have identical appeals to the same circuit court be decided differently based upon conflicting circuit court appellate decisions. Moreover, as occurred here, because there is no process for further appeals, county court judges subsequently faced with similar issues are often

23

left to choose which of the conflicting circuit court appellate decisions they will follow in a particular case. Leaving the outcome of a person's lawsuit to the predilection of individual judges, rather than to a coherent body of law that applies across the board to other persons filing lawsuits in the same court, constitutes a miscarriage of justice reflecting a departure from the most essential requirement of law: equality before the law.

The only reason we have appellate courts is to prevent exactly this sort of injustice. An appellate system that fails to prevent such an injustice is not fulfilling its purpose. The existence of this problem undermines the credibility of the appellate courts in the eyes of the general public. Conflicting results with identical facts look at best like judicial whimsy, at worst judicial tyranny. The dramatic and wide-reaching ramifications of the failure to allow review to resolve conflicts and thus by omission to cause identically situated litigants to receive conflicting outcomes is "sufficiently egregious or fundamental to merit the extra review and safeguard provided by certiorari." Nader, 87 So. 3d at 727 (quotation omitted).

In this regard, I believe the majority errs when it uses only the perspective of the circuit court judges who made the decision under review to determine whether their incorrect decision was a departure from the essential requirements of law. The Supreme Court in Nader clearly rejected such a mechanical approach.

In Nader, the Supreme Court upheld the Second District Court of Appeal's issuance of a writ of certiorari quashing a circuit court appellate decision. The circuit court appellate decision under review in Nader followed the decision of another district court which was the only decision on point at the time. Id at 725. Looking from the perspective of the circuit court judges who made the decision under review, the circuit court judges clearly did not depart from the essential requirements of law because they were only doing what they were bound by law to do – obeying controlling precedent by following the only district court precedent on point. Id. Nevertheless, the Supreme Court approved the issuance of a writ of certiorari to quash their decision. The Supreme Court did so by giving weight, not just to error from the perspective of the circuit court judges, but also to the "wide-reaching ramifications" of failing to provide for further review. In particular, the Supreme Court cited with approval to the Second District's concern for the need to "authorize supreme court review" and establish "binding precedent" Id. at 724-25, factors which the majority opinion here does not adequately credit.

Concerning the adequacy of relief, there is no other suitable method of review. The county court's authority to certify issues of great public importance directly to the district courts of appeal is not adequate. The Second District in Stilson and the Florida Supreme Court in Ivey both acknowledged the existence of the county

25

court's authority in this regard, and they both still concluded that "there may never be 'clearly established principles of law' governing a wide array of county court issues, including PIP issues." Ivey, 774 So. 2d at 683; Stilson, 692 So. 2d at 983. These statements by the Second District and the Florida Supreme Court confirm that the county court's ability to certify is not a solution. Unless one finds acceptable the idea that "there may never be 'clearly established principles of law' governing a wide array of county court issues, including PIP issues," the inescapable conclusion is that county court certification is simply not an adequate remedy for circuit court appellate conflicts.

This conclusion is borne out by experience. While the conflicting legal precedents in the circuit court at issue in this case were ultimately resolved by this court based on a county court certification, the conflict at issue here festered in the circuit court for years, causing identically situated parties who filed or defended suits in the same county court to receive diametrically different outcomes.[13] And that

---

[13] See, e.g., Allstate Ins. Co. v. Gables Ins. Recovery Inc., a/a/o Moran, No. 13-305 AP (Fla. 11th Cir. Ct. May 18, 2016) (policy language not sufficient) (Lederman, Cohen, and Prescott, JJ.); Allstate Fire & Cas. Ins. Co. v. Hallandale Open MRI LLC, a/a/o Blake, 23 Fla. L. Weekly Supp. 683 (Fla. 11th Cir. Ct. Dec. 7, 2015) (policy language not sufficient) (Hogan-Scola, Cueto, and Orshan, JJ.); Allstate Fire & Cas. Ins. Co. v. Hallandale Open MRI LLC, a/a/o Politesse, 21 Fla. L. Weekly Supp. 989 (Fla. 11th Cir. Ct. June 23, 2014) (policy language sufficient) (Korvick, Bloom, and Walsh, JJ.); Allstate Indem. Co. v. Gables Ins. Recovery, Inc., a/a/o Jimenez, 22 Fla. L. Weekly Supp. 1146 (Fla. 11th Cir. Ct. June 8, 2015) (policy

26

resolution would not have helped the litigants in this case, but for our issuance of the writ. The history of this case and the many related cases show that the county court's authority to certify is not adequate to provide a timely resolution of the conflict.

On reflection, this fact should have been obvious from the beginning. Examination of the Florida Supreme Court's jurisdiction to review district court decisions suggests that the drafters never viewed a court's jurisdiction to review certified questions as an adequate replacement for a court's jurisdiction to resolve conflict. When the drafters removed the Florida Supreme Court's authority to issue writs of certiorari, they provided the Florida Supreme Court both the discretion to review certified issues and, separately, the discretion to review conflicts between the district courts. See Art. V, §§ 3(b)(3), (4), (7), (8), Fla. Const. The drafters would not have provided both avenues for review if they believed review by certification adequately addressed the need for review of conflicts.

History proved the drafters right. In 2015, for example, the Florida Supreme Court reviewed 33 cases certified as having great public importance but 864 cases

---

language sufficient) (Bernstein, Hendon, and Manno Schurr, JJ.); <u>Allstate Prop. & Cas. Ins. Co. v. Royal Diagnostic Ctr. Inc., a/a/o Mondy</u>, 21 Fla. L. Weekly Supp. 627 (Fla. 11th Cir. Ct. Apr. 3, 2014) (policy language sufficient) (Smith, Lobree, and Verde, JJ.).

27

based on conflict.[14] As these figures show, the Supreme Court considers over 25 times more cases under conflict jurisdiction than certification jurisdiction. These court statistics indicate that the discretion to review certified questions is not an adequate replacement for the discretion to review conflicts.

Some parts of the legal community are exploring other ways to address the problem.[15] Obviously, if and when another adequate solution to the problem of incorrect results in circuit court appeals which are inconsistent with other circuit court decisions in the same circuit and district becomes available, the analysis set forth in this opinion would suggest that second-tier certiorari would not be

---

[14] Florida Supreme Court, Supreme Court Monthly/Term/Yearly Statistics for the Period 01/01/2015 – 12/31/2015, http://www.floridasupremecourt.org/pub_info/documents/caseload/2015_Florida_ Supreme_Court_Caseload.pdf (last visited March 15, 2017).

[15] One idea being floated is to create en banc circuit court panels. In most circuits, such panels would be "be impractical because of the large number of circuit judges that would be involved." State v. Lopez, 633 So. 2d 1150, 1151 (Fla. 5th DCA 1994). But even if one untangled the problem of the size of such panels, en banc circuit court panels would not resolve conflicts between circuits within a district. Perhaps district-wide en banc circuit panels could be created drawn from, and with authority to bind, all circuits in a district. Such a panel, however, begins to resemble a district court of appeal, except that its decisions would not be reviewable by the Supreme Court. Any solution that fails to provide Supreme Court review to ensure ultimate state-wide uniformity is not adequate. In the final analysis, our court system must ensure there is only one body of law in Florida that applies equally to all persons within the jurisdiction of the Florida courts. While there may be other solutions to this problem, the simple and direct fix is second tier certiorari as described in this opinion.

appropriate because another remedy was available. At the present time, however, no such method is available. Therefore, when considering "the adequacy of other relief," I can only conclude there is no other adequate relief at his time for incorrect circuit court appellate decisions that are inconsistent with other circuit court appellate decisions except certiorari.

Thus, based on both "the <u>gravity of the error</u> and the <u>adequacy of other relief</u>[,]" <u>Custer</u>, 62 So. 3d at 1092, a district court has the discretion to issue a writ of certiorari to review an incorrect circuit court appellate decision that expressly and directly conflicts with another circuit court appellate decision in the same district.

**CONCLUSION**

The county and circuit courts acting in their appellate capacity deal with issues that touch the lives of the people of Florida in crucial ways. It is imperative that clear precedents be available to the judges and litigants doing this vital work. As judges, we cannot accept a system of appellate review in which "there may never be 'clearly established principles of law' governing a wide array of county court issues." <u>See Ivey</u>, 774 So. 2d at 683. Like judge-made rules of procedure, judge-made interpretations of common law writs "should never be permitted to become so technical, fossilized, and antiquated that they obscure the justice of the cause and

29

lead to results that bring its administration into disrepute." In re Gottschalk's Estate, 196 So. 844, 844 (Fla. 1940).

Rather than resign ourselves to an unacceptable situation, condemn litigants to unequal treatment, and stand by while the prestige and credibility of the courts is lowered in the eyes of the public, the courts should develop this judge-made law to serve the needs of the courts, litigants, and people as they have in the past. See, e.g., De Groot, 95 So. 2d at 915. Because incorrect appellate decisions of the circuit courts which are inconsistent with prior decisions of the circuit courts in the same circuit and district constitute miscarriages of justice and no other adequate remedy exists, the issuance of a writ of certiorari properly serves as the backstop to prevent this sort of grievous error.